MITCHELL E. GRAY, EMPLOYEE, PLAINTIFF v. CAROLINA FREIGHT CARRIERS, INC., SELF-INSURED EMPLOYER, DEFENDANT

No. 9110IC218

(Filed 3 March 1992).

1. **Master and Servant § 69 (NCI4th)— permanent partial disability — subsequent permanent total disability — credit for prior payments**

 A workers' compensation award for permanent and total disability under N.C.G.S. § 97-29 without a credit to defendant for its prior payments for partial disability pursuant to N.C.G.S. § 97-31 was affirmed but remanded for a determination of whether plaintiff's compensation must be adjusted due to any overlap between the periods of payment for the awards under

N.C.G.S. §§ 97-31 and 29. Once the § 97-31 period of disability ends, the general rule is that any subsequent disability benefits to which the employee is entitled may be awarded to the employee without crediting the employer for the disability payments made under § 97-31 (although maximum periods of payment may apply) whether the same body part or a different body part is involved in the subsequent injury. However, the employee is precluded from simultaneously receiving a § 97-31 and a § 97-29 award where a permanently and totally disabling injury occurs during the period of time when the employee is entitled to partial disability benefits pursuant to § 97-31.

**Am Jur 2d, Workmen's Compensation §§ 340, 365.**

2. **Master and Servant § 69 (NCI4th)— subsequent injury— permanent disability—no apportionment**

A workers' compensation award for permanent and total disability without apportionment for a prior injury was affirmed. The Workers' Compensation Act does not provide for apportionment in the case of successive injuries (other than those specified in N.C.G.S. § 97-35) sustained by an employee in the same employment, regardless of whether or not the employee received compensation for the prior injury. The facts pertaining to plaintiff's total disability are inconsistent with every situation in which our courts have previously permitted apportionment of a permanent total award and defendant effectively concedes that it would be impossible to apportion that part of plaintiff's disability which was caused by his second back injuries as opposed to his first, so that any attempt at apportionment would be speculative.

**Am Jur 2d, Workmen's Compensation § 333.**

APPEAL by defendant from Opinion and Award of the Full Commission filed 4 December 1990. Heard in the Court of Appeals 3 December 1991.

*Anderson & Clayton, by Michael J. Anderson, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Daniel C. Pope, Jr., for defendant-appellant.*

GREENE, Judge.

Defendant appeals from an Opinion and Award of the North Carolina Industrial Commission filed 4 December 1990, affirming the Deputy Commissioner's decision finding plaintiff totally and permanently disabled, and denying defendant's request for credit for payments previously made to plaintiff for ten percent permanent partial disability of the back.

The facts pertinent to this appeal are as follows: From 1971 until September 1986, plaintiff worked as a long-distance truck driver for defendant. On 27 September 1985, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant which resulted in a herniated disc, for which plaintiff had surgery. By January 1986, plaintiff had no back or leg pain, and experienced only a minor backache. Defendant admitted liability for this accident, and paid plaintiff compensation benefits for temporary total disability from 28 September 1985 to 15 December 1985, at which time plaintiff returned to work. In addition, defendant admitted liability for ten percent permanent partial disability of the back as a result of the September 1985 accident, and paid plaintiff pursuant to N.C.G.S. § 97-31(23), compensation benefits at the rate of $280.00 per week for 30 weeks, the last check being sent on 10 November 1986. The payments for plaintiff's ten percent permanent partial disability to the back totaled $8400.00.

On 24 July 1986, while working for defendant at a truck terminal, plaintiff twisted his back while attempting to connect two trailers. Plaintiff experienced low back pain and missed some time from work. On 19 September 1986, plaintiff experienced another injury by accident arising out of and in the course of his employment with defendant when he felt sharp pain in his back while attempting to connect two trailers. Plaintiff worked through the next day, but has since done no work for wages. Defendant admitted liability for this accident, and undertook to pay plaintiff compensation benefits for disability at the rate of $294.00 per week beginning 21 September 1986, and continuing for necessary weeks.

From September 1986 until the present, plaintiff has received medical treatment, including additional back surgery, from several doctors. Plaintiff has been treated for a variety of medical problems, including but not limited to diabetes, back pain, leg pain and numbness, buttock pain, constipation, abdominal pain, stomach numbness, chest pain, and severe depression. In December 1987,

following a dispute between plaintiff and defendant regarding the payment of permanent disability compensation, plaintiff requested, pursuant to N.C.G.S. § 97-83, a hearing before the Industrial Commission for a ruling on plaintiff's entitlement to permanent and total disability benefits. Deputy Commissioner William Haigh heard the issues on 6 June 1988, and on 8 November 1989, entered an Opinion and Award finding plaintiff permanently and totally disabled as of 21 September 1986, and denying defendant's request for a credit of $8400.00 for the prior payments made to plaintiff for the ten percent permanent partial disability of the back. Specifically, Commissioner Haigh found that

> [t]he combined effect of the [July and September 1986 back injuries] aggravated plaintiff's pre-existing back condition and caused injury to his back . . . . By reason of the combined effects of the [1986 back injuries], independent of plaintiff's other medical conditions including depression and neuropathies, he has been rendered unable to earn any wages in any employment since September 21, 1986, and he remains so incapacitated thereby.

Commissioner's Finding of Fact No. 18.

---

The issues are whether I) an award made for permanent total disability as the result of a compensable injury pursuant to N.C.G.S. § 97-29, which follows a previous award to the same employee for permanent partial disability as the result of a prior compensable injury pursuant to N.C.G.S. § 97-31, entitles the employer to a credit equal to the amount of the Section 97-31 award; and II) the Section 97-29 award must be apportioned to reflect the percentage of total disability caused by the second compensable injury.

I

*Credit*

[1]  North Carolina's Workers' Compensation Act, N.C.G.S. §§ 97-1 *et seq.* (1991) (the Act), provides compensation for an employee who suffers an injury by accident arising out of and in the course of his employment. N.C.G.S. § 97-2(6) (1991). The Act provides for compensation to be paid during the employee's healing period, that is, "the time when the [employee] is unable to work because of his injury, is submitting to treatment, . . . or is convalescing." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 288-89, 229

S.E.2d 325, 328 (1976), *disc. rev. denied*, 292 N.C. 467, 234 S.E.2d 2 (1977). In addition, Section 97-31 and Section 97-30 of the Act entitle the employee to additional benefits for permanent partial disability. Under Section 97-31, a disability is deemed to continue after the employee's healing period, and the employee is entitled to compensation for the number of weeks specified in the statute. Under Section 97-30, an employee who proves partial disablement is entitled to compensation in accordance with the provisions of the statute. *Grant v. Burlington Indus., Inc.*, 77 N.C. App. 241, 251, 335 S.E.2d 327, 334 (1985). Moreover, N.C.G.S. § 97-29 provides that, where an employee's incapacity for work resulting from an injury is total and permanent, the employer shall pay compensation to the injured employee during the employee's lifetime.

The Act does not contain a provision, however, requiring that an award for permanent and total disability made pursuant to Section 97-29 be adjusted to credit an employer for any prior award made to the same employee pursuant to Section 97-31 or Section 97-30. A "credit" is a deduction by the employer of a prior payment made to an injured employee from the compensation benefit that is now due the employee. The only statute in North Carolina authorizing a credit is N.C.G.S. § 97-42. It provides, in order to encourage voluntary payments by the employer while the worker's claim is being litigated and he is receiving no wages, that any payments made by the employer to the injured employee which were not due and payable when made, may in certain cases be deducted from the amount of compensation due the employee. *See Evans v. AT&T Technologies*, 103 N.C. App. 45, 47-48, 404 S.E.2d 183, 185, *disc. rev. allowed*, 329 N.C. 787, 408 S.E.2d 519 (1991). For this Court to integrate into the Act an additional credit of the type sought by defendant would not only violate sound principles of statutory construction, *see State v. Camp*, 286 N.C. 148, 151-52, 209 S.E.2d 754, 756 (1974) (in construing a statute, court is without power to add provisions not contained therein), but would reduce an employee benefit specifically authorized by the Legislature. We conclude that we can do neither.

Our conclusion is consistent with the majority of jurisdictions considering this issue, and with prior decisions of this Court. *See* 2 Arthur Larson, Larson's Workmen's Compensation Law § 59.42 (1986) (hereinafter *Larson*); *Smith v. American & Efird Mills*, 51 N.C. App. 480, 277 S.E.2d 83 (1981), *modified on other grounds and aff'd*, 305 N.C. 507, 290 S.E.2d 634 (1982). The majority view

is that, in the absence of a statute providing otherwise, "the permanent partial award need not be deducted from the subsequent permanent total award." *Larson* at § 59.42(c). The basis for this view has been well-stated by Professor Larson:

> The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50 percent of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50 percent of total. After having received his prior payments, he may, in future years, be able to resume gainful employment . . . . If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much. A similar principle may be applied to an individual member that has been restored in whole or in part.

*Larson* at § 59.42(g). In *Smith, supra,* this Court in an apparent adoption of the majority view, held that full payment of compensation pursuant to Section 97-29 "should be allowed without regard to the compensation previously awarded under G.S. 97-30." *Smith,* 51 N.C. App. at 490, 277 S.E.2d at 89.

Although in *Smith* the prior award at issue was one authorized by Section 97-30, rather than Section 97-31 as in the instant case, this difference is immaterial as it relates to the issue of credit. The two statutes serve the same purpose — to compensate the employee for partial disability suffered as the result of a work-related injury. An employee who suffers injuries resulting in partial disability of a general nature is entitled to compensation under Section 97-30, while an employee who sustains injuries of a specific nature is entitled to recover pursuant to the schedule provided in Section 97-31. In fact, an employee who sustains both general and specific injuries may recover benefits under both Section 97-30 and Section 97-31. *Little v. Food Service,* 295 N.C. 527, 533, 246 S.E.2d 743, 747 (1978). In light of the well-established compatibility of these two statutes, the rationale of *Smith* applies with equal force whether the prior partial disability benefits have been awarded under Section 97-30, or under Section 97-31.

Thus, once the Section 97-31 deemed period of disability ends, the general rule is that any subsequent disability benefits to which

the employee is entitled may be awarded to the employee without crediting the employer for the disability payments made under Section 97-31, although in certain situations, maximum periods of payment may apply. *See* N.C.G.S. § 97-35 (1991) (where permanent disability award is followed by Section 97-31 award in the same employment, employee limited to 500 weeks compensation). This rule applies whether the same body part that was the basis of a prior Section 97-31 award or a different body part is involved in the subsequent injury. However, where a permanently and totally disabling injury occurs *during* the period of time when the employee is entitled to partial disability benefits pursuant to Section 97-31, the employee is precluded from simultaneously receiving a Section 97-31 and a Section 97-29 award. N.C.G.S. § 97-34 (1991). Therefore, to the extent that plaintiff's Section 97-29 award overlaps with the benefits he received under Section 97-31, the Industrial Commission must adjust plaintiff's compensation to comply with Section 97-34. *See Smith,* 51 N.C. App. at 490, 277 S.E.2d at 89-90 (stacking of total benefits on top of partial benefits, for the same period, is not authorized by the Act).

## II

### *Apportionment*

[2]   Although the general rule in workers' compensation law is that "an employer takes the employee as he finds her with all her pre-existing infirmities and weaknesses," *Morrison v. Burlington Indus., Inc.,* 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981), apportionment of compensation awards between an employer and an employee is recognized in a handful of states. *Larson* at § 59.21. In this context, apportionment means that "an employee with a prior disability receives for a subsequent disability only what he would have been entitled to for the latter disability considered alone." *Id.* North Carolina's Workers' Compensation Act contains two provisions for apportionment of disability awards. First, N.C.G.S. § 97-33 provides for "prorating" of a disability award for permanent injury, such as specified in Section 97-31, and prior disability resulting from epilepsy, injuries sustained in certain military service, or injuries sustained in another employment. *Pruitt v. Knight Publishing Co.,* 289 N.C. 254, 256, 221 S.E.2d 355, 357 (1976). Second, N.C.G.S. § 97-35 provides that, where "an employee has previously incurred permanent partial disability through the loss of a hand, arm, foot, leg, or eye, and by subsequent accident incurs total permanent

disability through the loss of another member, the employer's liability is for the subsequent injury only."[1]

The Act does not provide, however, for apportionment in the case of successive injuries (other than as specified in Section 97-35) sustained by an employee in the same employment, regardless of whether or not the employee received compensation for the prior injury. *See Bailey v. Smoky Mt. Enters., Inc.,* 65 N.C. App. 134, 308 S.E.2d 489 (1983), *disc. rev. denied,* 311 N.C. 303, 317 S.E.2d 678 (1984) (Section 97-33 did not require apportionment where employee received successive Section 97-31 awards for injury to the back). Consistent with the Legislature's failure to mandate apportionment in such a case, Section 97-35 provides that an employee who receives a permanent injury compensable under Section 97-31, after having received another permanent injury in the same employment, is entitled to compensation for *both* injuries. N.C.G.S. § 97-35 (1991). Furthermore, because an employee sustaining an' injury scheduled in Section 97-31 which renders him permanently and totally disabled may now elect to instead recover compensation under Section 97-29, *Whitley v. Columbia Lumber Mfg. Co.,* 318 N.C. 89, 96, 348 S.E.2d 336, 340 (1986), we read Section 97-35 as allowing recovery for successive permanent injuries in the same employment even when the employee is compensated for the subsequent injury under Section 97-29 instead of Section 97-31. In such a case, the provision in Section 97-35 limiting the period of recovery to 500 weeks would not apply since, unlike in the case of awards under Sections 97-31 and 97-30, no maximum period of recovery is set forth in Section 97-29.

In addition to the types of apportionment authorized in the Act, apportionment has also been allowed by our Courts when a non-work-related disease or infirmity actually *causes* part of the employee's total disability.[2] *See Morrison,* 304 N.C. at 18, 282

---

1. Apportionment as provided for in Section 97-33 and Section 97-35, however, is covered under the Act's Second Injury Fund, N.C.G.S. § 97-40.1 (1991). Application of the Second Injury Fund statute in effect apportions the disability award between the employer and the Second Injury Fund, rather than between the employer and the employee, thus reducing the burden that would otherwise fall on the employee due to apportionment of the permanent disability award.

2. Apportionment is not appropriate, however, where a worker's disability results solely from lung disease, which disease is caused in part by occupational factors such as cotton fiber inhalation and in part by cigarette smoke and other non-work-related factors, if the worker's exposure to cotton dust significantly con-

S.E.2d at 470 (apportionment required where incapacity for work is caused in part by pre-existing, nondisabling, non-job-related diseases or infirmities, such as lung disease caused by smoking, bronchitis, and diabetes, without acceleration or aggravation by a compensable accident, and in part by lung disease resulting from work-related inhalation of cotton fibers); *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E.2d 101 (1981) (applying apportionment rule established in *Morrison*); *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 354 S.E.2d 477 (1987) (nothing in the Workers' Compensation Act prohibited the apportionment of an award where only a portion of claimant's total disability was caused by his work-related heart attack and the remaining disability was caused by two non-work-related heart attacks); *Pitman v. Feldspar Corp.*, 87 N.C. App. 208, 360 S.E.2d 696 (1987), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988) (where evidence showed that a portion of employee's total disability was caused by several medical conditions unrelated to employment, *Morrison* apportionment rule applied). However, where an employee sustains a compensable injury which merely aggravates or accelerates a pre-existing disease or infirmity, no apportionment is permitted. *See Morrison*, 304 N.C. at 15, 282 S.E.2d at 468 (quoting *Anderson v. Northwestern Motor Co.*, 233 N.C. 372, 374, 64 S.E.2d 265, 267 (1951) ) (when an employee with a pre-existing disease or infirmity sustains a compensable injury by accident which "materially accelerates or aggravates the pre-existing disease or infirmity" and contributes to the employee's disability, "the injury is compensable, even though it would not have caused death or disability to a normal person").

The question therefore is, since the Act contains no provision allowing it, whether our case law authorizes apportionment in situations like that of plaintiff. In keeping with the requirement of construing workers' compensation law in favor of the claimant, and compensability, *Chandler v. Nello L. Teer Co.*, 53 N.C. App. 766, 768, 281 S.E.2d 718, 719 (1981), *aff'd*, 305 N.C. 292, 287 S.E.2d 890 (1982), we conclude that it does not. The facts pertaining to plaintiff's total disability are inconsistent with every situation in which our Courts have previously permitted apportionment of a permanent total award. First, the evidence established that plain-

---

tributed to the disease's development, and the worker's occupation exposed the worker to a greater risk of contracting the disease than the general public. *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983).

tiff's pre-existing infirmity, if any, was *work-related*. Second, plaintiff's pre-existing infirmity, if anything, was *aggravated* by plaintiff's subsequent 1986 back injuries; the pre-existing infirmity, in and of itself, did not actually *cause* any portion of plaintiff's total disability. As such, plaintiff's situation is distinguishable from those situations in which judicial apportionment has been applied. However, even if we were to conclude that apportionment was required in this case, defendant effectively concedes that it would be impossible to apportion that part of plaintiff's disability which was caused by his second back injuries as opposed to his first. In this event, any attempt at apportionment would be speculative, thus entitling the employee to an award for his entire disability. *Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985).

For the foregoing reasons, the Industrial Commission's decision awarding plaintiff compensation for permanent and total disability, without a credit to defendant for its prior payments pursuant to Section 97-31, and without apportionment, is affirmed. However, we remand for a determination, consistent with this opinion, of whether plaintiff's compensation must be adjusted due to any overlap between the periods of payment for the Section 97-31 and Section 97-29 awards.

Affirmed and remanded.

Judges PARKER and WYNN concur.