All defendants appeal the Deputy Commissioner's conclusions that plaintiff contracted an occupational disease in the subject employment, and the Travelers appeals the finding that it was on the risk during the last injurious exposure to asbestos. The amount of the award per N.C.G.S. §§ 97-61.5 (b) and 97-61.6 was not questioned.
On review, the greater weight of the evidence supports the Deputy Commissioner's conclusion that plaintiff's employment put him at greater risk of and actually significantly contributed to his fatal illness, and that legal causation and liability, without apportionment, was the proper determination when the relative contributions of the workplace asbestos and smoking could not be determined. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983); Morrison v. Burlington Industries, 304 N.C. 1,282 S.E.2d 458 (1981); Gray v. Pilot Freight Lines,105 N.C. App. 480, 489, 414 S.E.2d 102 (1992).
With due deference to the Deputy Commissioner who heard first hand the pertinent testimony, particularly that of decedent's co-worker, Mr. Carlyle, we affirm the finding that the decedent was not even minimally exposed to asbestos during the last 57 days of his employment, during which the employer as a self-insured was on the risk. N.C.G.S. § 97-57; Barber v. Babcock WilcoxConstruction Co., 101 N.C. App. 564, 400 S.E.2d 735 (1991). The Commission is empowered to believe any, all or part of a witness' testimony. Anderson v. Northwest Motor Co., 233 N.C. 372, 376,64 S.E.2d 265 (1951). In this instance, evaluation of the testimony involved not so much credibility as getting an overall idea of what occurred from the information conveyed in light of the pattern of activities and events described. The hearing Deputy, seeing the witness' demeanor and the relative certainty with which he responded to questions, was in the best position to gain a true sense of the testimony and evaluate it. Pollard v. Krispy Waffle#1, 63 N.C. App. 354, 304 S.E.2d 762 (1983).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between John Tucker and defendant-employer.
3. Travelers Insurance Company was the compensation carrier on the risk until 2 July 1982. Thereafter defendant-employer was a qualified self-insurer.
4. John Tucker was born on 23 August 1920.
5. John Tucker last worked for defendant-employer on 30 September 1982.
6. John Tucker died on 21 March 1990 [after this claim was initiated in February, 1990].
7. John Tucker's widow, Juanita, was wholly dependent upon decedent at the time of his death.
8. The parties also stipulated to a Form 22 from which plaintiff's average weekly wage and compensation rate were derived, and to a two-page report from Dr. Lankford
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. John Tucker (hereinafter referred to as decedent) was 69 years old at the time of his death. Except for six years when he lived in Newport News in the 1940's, decedent lived in Dobson his entire life. He is survived by his wife of 50 years, Juanita, and one adult child.
2. In the shipyards in Newport News decedent worked as a shipfitter. Thereafter he drove a gasoline truck for Standard Oil for 14 years. He was also self-employed in poultry farming for some period of time and built and ran a service station and grocery store which was destroyed by a tornado in the late 1950's. Decedent went to work for defendant-employer in 1973 and worked full-time until he retired on 30 September 1982.
3. Decedent's health was good at the time of his retirement and up until 1987. Decedent's parents died of myocardial infarctions, while one brother died of lung cancer and the other brother died of Parkinson's disease.
4. Decedent's job with defendant-employer was that of maintenance mechanic. He and a fellow worker, John Carlyle, were assigned to boiler work for the entire school system, consisting of 15 schools.
5. In the course of his employment as a maintenance mechanic for defendant-employer, decedent had a significant exposure to asbestos. From October to April each school year decedent would work daily on furnaces in small boiler rooms, cutting off the old asbestos and mixing 50-pound bags of asbestos with water to apply to the furnaces. Asbestos could be seen floating in the air and also seen on decedent's clothes. Decedent worked with ceiling tiles which contained a percentage of asbestos. Decedent cut his own gaskets out of an asbestos material. Decedent tore off asbestos pipe covering to install fiberglass pipe coverings. In the summers decedent might work with asbestos tile in the lunchrooms. Decedent never wore a mask.
6. Decedent smoked cigarettes for 25 to 30 years, two to three packs a day. Decedent quit smoking in 1968 and did not smoke thereafter.
7. In December 1987 decedent was seen by Dr. Sigal at Salem Chest Specialists for complaints of a cough, hemoptysis, increased dyspnea on exertion, and wheezing with cough. X-ray revealed large left lower lobe superior segment mass with left mediastinal adenopathy, biopsy of which showed poorly differentiated adenocarcinoma. Radiation therapy and later chemotherapy were undertaken, but decedent's disease nonetheless progressed and he died on 21 March 1990.
8. Dr. Sigal's reading of the x-ray on 16 November 1987 noted bilaterally increased interstitial markings.
9. A B-reader is a radiologist who has had special training in reviewing chest films to determine the presence or absence of asbestos disease and then classifies what is seen on a one, two, or three basis (mild to severe, respectively).
10. Dr. Ballard, a B-reader, reviewed decedent's November 1987 chest films. While noting they were of insufficient quality for ILO classification, and of poor contrast, Dr. Ballard did note small irregular opacities in the mid and lower lung zones bilaterally. Profusion appeared to be one/two, which means the reader detected opacities of a mild level (1), but that another reader might consider it a (2). No evidence of plural plaques or definite plural disease was seen. Dr. Ballard concluded that the parenchymal changes he noted were consistent with asbestosis.
11. Asbestosis is scarring of the lungs secondary to asbestos exposure.
12. Asbestos is a carcinogen for the lung, as are cigarettes.
13. Asbestos-related cancers occur twice as often in the lower lobes as in the upper lobes, while cigarette smoking-related cancers occur twice as often in the upper lobes.
14. The incidence of lung cancer is very significant among asbestos workers and is the leading cause of death in asbestos workers.
15. Individuals exposed to asbestos or cigarette smoke are at an increased risk of developing lung cancer as compared to members of the general public not so exposed.
16. There is a synergistic effect between smoking and asbestos exposure such that smokers with asbestos exposure show a 50 to 90 times greater incidence of lung cancer as compared to the general population.
17. It is difficult if not impossible to separate the relative contributions of asbestos and cigarette smoking when a person with significant exposures to both develops lung cancer.
18. Decedent did have asbestosis prior to his death. Decedent's asbestosis was caused by his employment with defendant-employer.
19. Decedent's employment with defendant-employer, by virtue of his significant exposure to asbestos, placed him at an increased risk of developing lung cancer as compared to members of the general public not so exposed.
20. Decedent's exposure to asbestos in the course of his employment with defendant-employer was a significant contributing factor in his development of lung cancer and his resulting death.
21. Cigarette smoking was also a significant contributing factor in decedent's development of lung cancer, but the relative contribution of each carcinogen cannot be assessed.
22. While decedent's exposure to asbestos was significant, it was not constant. He did have other duties such as plumbing, electrical, heating, and working on vehicles, which did not involve exposure to asbestos. The boilers were cut off in April each year and asbestos work on the furnaces was usually done in the winter months because the stuff would dry quicker when the boilers were running. The undersigned cannot find by the greater weight of the evidence that decedent was exposed to the hazards of asbestos for 30 days after 2 July 1982.
23. Decedent's average weekly wage is $193.17.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Prior to his death decedent suffered from asbestosis caused by his employment with defendant-employer, such that it is a compensable occupational disease under G.S. § 97-53 (24). Plaintiff was therefore entitled to 104 weeks of compensation payable at the rate of $128.84 pursuant to G.S. § 97-61.5 (b).
2. Decedent's lung cancer is an occupational disease pursuant to G.S. § 97-53 (13), inasmuch as his employment placed him at an increased risk of developing lung cancer and was a significant contributing factor to his development of lung cancer. Because decedent's death resulted proximately from this compensable occupational disease, his widow Juanita Tucker is entitled to benefits pursuant to G.S. § 97-38 for a period of 400 weeks from the date of death, payable at the rate of $128.84.
3. Had there been a positive showing that decedent had been exposed to the hazards of asbestosis for as much as 30 working days after 2 July 1982, whether or not that exposure was sufficient to be injurious, it would have been deemed injurious and the self-insured employer would have been liable for the compensation payable hereunder. However, the undersigned was of the opinion that the evidence was not sufficient to find that plaintiff was exposed to the hazards of asbestosis for 30 days after 2 July 1982, and therefore, pursuant to G.S. § 97-57, Travelers was the carrier on the risk when plaintiff was last injuriously exposed to the hazard of asbestosis and shall be liable for the compensation payable pursuant to this Opinion and Award.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant-carrier Travelers Insurance Company shall pay plaintiff's widow 104 weeks of compensation at the rate of $128.84 per week. This compensation shall be paid in a lump sum, subject to the attorney fee hereinafter approved.
2. Defendant-carrier Travelers Insurance Company shall pay plaintiff's widow weekly compensation at the rate of $128.84 for a period of 400 weeks from the death of death. That compensation which has accrued shall be paid to her in a lump sum, subject to the attorney fee hereinafter approved.
3. Defendant-carrier Travelers Insurance Company shall pay the costs, but not including the costs plaintiff's counsel incurred to prosecute this action.
4. Defendant-carrier Travelers Insurance Company shall pay all medical expenses incurred by decedent for treatment of his compensable occupational disease, when bills for the same have been submitted to and approved by the Industrial Commission.
5. Defendant-carrier Travelers Insurance Company shall also pay burial expenses not exceeding $2,000.00.
6. Defendant-carrier Travelers Insurance Company shall pay an expert witness fee in the amount of $700.00 to Dr. Dikman and $600.00 to Dr. Roggli.
7. Plaintiff's attorney is entitled to a fee of 25 percent of the compensation awarded herein, which amount shall be deducted from the sum due plaintiff and paid directly to Mr. Jernigan. In addition, every fourth compensation check shall be forwarded directly to Mr. Jernigan for the balance of his fee.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ COY M. VANCE COMMISSIONER
S/ _______________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/tmd 12/15/94