Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES, AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. As of June 16, 1988, plaintiff had been employed by defendant for over sixteen years. Over the course of her employment, she worked in all of the departments in the grocery store. She sustained an injury by accident arising out of and in the course of her employment on that date when she reached high over her head to pull a case of bacon off of a stack and something pulled in her right shoulder. At the time of the accident plaintiff was earning an average weekly wage of $284.00, rendering a compensation rate of $189.34, as shown on the Form 21 agreement approved by the Commission on January 18, 1989.
2. After initial treatment by Dr. Johnson, plaintiff was referred to Dr. Willett, an orthopaedic surgeon. She gave him a history of having had some preexisting problems with the shoulder for eight to nine years. He treated her with medication and physical therapy, but an arthrogram performed in August indicated that she had a rotator cuff tear, so he subsequently performed surgery to her shoulder. During the operation, he did not discover a discrete tear but found degenerative changes and a frayed area which he reinforced.
3. Plaintiff improved following the surgery, but in December 1988 she fell while grocery shopping and hurt her shoulder under non-compensable circumstances. She continued to complain of persistent pain after the fall, so Dr. Willett had an arthrogram performed which revealed another rotator cuff tear. This tear was probably caused by the fall in December. Dr. Willett did not recommend further surgery to her shoulder, however. In order to rule out the possibility of a cervical spine problem causing her symptoms, he also had an MRI performed and referred her to Dr. Kroll for a second opinion. Apparently Dr. Kroll had a myelogram done, as well. Although the test revealed degenerative changes in her cervical spine, Dr. Willett was of the opinion that the findings did not explain her symptoms.
4. Dr. Willett gave plaintiff a permanency rating in July 1989. He was unable to separate the contribution of the two injuries.
5. As a result of her injury plaintiff was unable to return to work for defendant in her former capacity in the meat department. The only other job offered by defendant involved handling files, some of which were located in cabinets too high for her to reach because of her impairment. Consequently, defendant did not offer work to her which was suitable to her capacity. In the summer of 1990, plaintiff helped do inventory at the store where her daughter worked for one day, with difficulty, but the store declined to hire her as a full time clerk. Other than this temporary job, she was unable to find alternative employment despite reasonable efforts to do so, including contacts with a dozen employers during and prior to July 1991. She then went to the Employment Security Commission and the Department of Vocational Rehabilitation. On or about April 15, 1992, they found for her a part time job in telemarketing in Arden which she declined because of the ten to eleven mile drive required. However, that distance was not unreasonable. She could have earned minimum wage — and the undersigned take judicial notice that the applicable minimum wage was then $4.25 an hour — for twenty hours per week in that position.
6. Defendant, who had admitted liability for this injury and paid compensation to plaintiff until September 22, 1989, did not offer vocational placement assistance until June 1992. At that time plaintiff, through counsel, refused to cooperate.
7. Plaintiff has not received further treatment for her shoulder problem, but she was evaluated by Dr. Lincoln on March 20, 1990 at the request of her attorney. Dr. Lincoln found that she had developed sympathetic dystrophy, a condition which may have been identified by Dr. Kroll, whose medical reports are not in evidence. Dr. Lincoln did not recommend further surgery.
8. As of the date of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old. She had a sixth grade education and could read and write. Besides her work for defendant, she had work experience in waitressing and textile related employment. As indicated by a physical capacity evaluation in August 1989, and confirmed by plaintiff's vocational expert in August, 1990, she could sit, stand or walk for eight hours, lift up to five pounds occasionally, carry up to five pounds frequently, drive, use her feet, bend, squat, crawl, push or pull with her left arm but not her right one, do limited crafts, light housework and light cooking.
9. Plaintiff was interviewed by Benson Hecker, Ph.D. regarding her ability to work, and he considered medical records. His evaluation that she is unable to work is not pursuasive in light of all the evidence.
10. Plaintiff reached maximum medical improvement on July 6, 1989. She sustained a twenty percent permanent partial disability to her right arm as a result of this injury by accident, but she did not sustain a compensable injury to her cervical spine. Although her restrictions have been limited to certain uses of her right arm, she was unsuccessful in her efforts to obtain suitable employment until she was offered the telemarketing position in Arden, a job which paid substantially less than she earned for defendant. She was thereafter unable to obtain a job which paid higher wages.
11. Plaintiff has been able to earn at least minimum wage for twenty hours per week, or $85.00, since she was offered the job in Arden on or about April 15, 1992. This was $199.00 less than she was capable of earning prior to June 16, 1988, rendering a temporary partial disability compensation rate of $132.67.
12. Defendants offered plaintiff the vocational assistance of a rehabilitation specialist by letter dated June 11, 1992, nearly three years after she had reached maximum medical improvement and three months after plaintiff's Form 33 claiming total disability, but after the matter had been calendared to be heard on July 14, 1992. Plaintiff reasonably believed that the offer was made to generate personal contact between the rehabilitation specialist (who did testify at hearing) and the plaintiff for the purposes of litigation, and was justified in rejecting such contacts prior to the hearing.
13. The record in the G.S. § 97-84 hearing before Deputy Commissioner Chapman was closed with the receipt of the deposition of Dr. Willett on January 7, 1993.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation for temporary total disability at her full compensation rate of $189.34 per week from September 23, 1989 until she was offered the job in Arden, subject to credit for any compensation previously paid for that period. N.C.G.S. § 97-29; Russell v. Lowes Product Distribution,108 N.C. App. 762, 764-65, 425 S.E.2d 454 (1993).
2. Plaintiff is entitled to compensation for temporary partial disability at the compensation rate of $132.67 per week from April 15, 1992 through the date of the hearing, until she regains the capacity to earn wages, subject to credit for compensation previously paid in respect to that period. N.C.G.S. § 97-30.
3. Alternatively, in lieu of said N.C.G.S. § 97-30 benefits, and at plaintiff's election, defendants shall pay 48 weeks of permanent partial disability benefits, in one lump sum, at the rate of $189.34 per week in compensation for plaintiff's 20% disability of her right arm. N.C.G.S. § 97-31(13); Gupton v.Builders Transport, 320 N.C. 38, 43, 357 S.E.2d 674 (1987); Gray
v. Carolina Freight Carriers, Inc., 105 N.C. App. 480, 489,414 S.E.2d 102 (1992).
4. Plaintiff justifiably refused rehabilitative services first tendered immediately prior to the hearing before the Deputy Commissioner. N.C.G.S. §§ 97-25.
5. Plaintiff is entitled to medical compensation necessary as a result of the compensable injury by accident to effect a cure, give relief or lessen her period of disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability at her full compensation rate of $189.34 per week from July 7, 1989 until April 15, 1992 subject to credit for the compensation previously paid for that period. Compensation has accrued, and shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
2. Defendant shall pay compensation to plaintiff for temporary partial disability at the rate of $132.67 until plaintiff regains her pre-injury wage earning capacity, but not beyond 300 weeks from the date of the injury. So much of this compensation as has accrued and shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
3. Alternatively, plaintiff may elect to receive 48 weeks of permanent partial disability benefits, in lieu of said temporary partial benefits, to be paid in lump sum. N.C.G.S. § 97-31(13).
4. Defendants shall pay interest at the rate of 8% per annum from January 7, 1993 on any unpaid portion of the compensation herein above awarded directly to the plaintiff, without deduction for the attorney fee approved. N.C.G.S. § 97-86.2.
5. Defendants shall pay all medical compensation expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
6. An attorney's fee in the amount of twenty-five percent of the indemnity compensation awarded is approved for plaintiff's counsel, which fee shall be deducted and paid directly to Mr. Mraz.
7. Defendants shall pay the costs.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ JAMES J. BOOKER COMMISSIONER
JRW/tmd 12/12/94