The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Alston. The sole issue before the Full Commission is whether the Deputy Commissioner erred in failing to allow defendant a credit under N.C. Gen. Stat. § 97-42. As the appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between the employee, Ann Powell, and defendant at that time.
3. The defendant is self-insured.
4. The Plaintiff's average weekly wage was $310.00.
5. The medical records of the Plaintiff as well as the records of Genex, a vocational rehabilitation company, are stipulated into evidence.
6. On 15 June 1992, the North Carolina Industrial Commission approved a Form 21 agreement between the parties, the provisions of which are a part of the record of this case.
 ***********
The Full Commission modifies and affirms the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 46 year old high school graduate who was employed as a cook for Marriott Corporation at the Siecor facility in Hickory, North Carolina, beginning in September 1991.
2. On 10 April 1992, at about 1:00 p.m., plaintiff pulled some meat off of a high shelf, catching it as it fell. Immediately, plaintiff felt a stabbing pain in her low back.
3. Plaintiff was first treated by her family doctor, Baxter Leonard, M.D., who later referred plaintiff to the care of Dr. David M. Jones, a neurosurgeon.
4. Dr. Jones began as plaintiff's treating physician on 30 April 1992, and has continued as plaintiff's treating physician to this date.
5. After evaluation and testing, Dr. Jones found a large herniated disk in plaintiff's low back at level L4-L5 with radiculopathy and profound weakness extending into plaintiff's right lower extremity.
6. On 7 May 1992, Dr. Jones performed a right L4-5 hemilaminectomy and diskectomy with removal of herniated free fragments, a right L4-5 medical facetectomy, and a right L5 foraminotomy. After surgery, plaintiff was referred to physical therapy.
7. Plaintiff remained out of work until September 1992 when she returned to work at Marriott with restricted hours and duties.
8. At the 9 October 1992 visit with Dr. Jones, plaintiff was noted to be working satisfactorily under the restrictions given. Plaintiff was rated at a disability of twenty percent (20%) of the back.
9. On 13 November 1992, plaintiff returned to Dr. Jones with complaints of increased difficulty walking and increasing back and leg discomfort primarily in the left leg. Plaintiff did not want to stop working.
10. Dr. Jones administered as series of tests including x-ray, MRI, myelogram, and post myelogram CT. Dr. Jones recommended surgery based upon a pre-operation diagnosis of L4-L5 recurrent herniated nucleus pulposis with spondylosis and lateral recess stenosis at L4 through S1.
11. Dr. Jones performed a second surgery on plaintiff on 1 January 1993. The surgery entailed the removal of scar tissue around the area of the previous operation, the removal of recurrent disk fragments, decompression and removal of stenosis-type bone formation at L5-S1, and posterior lumbar interbody fusion from L4 through S1 using steel rods and screws and bone grafts obtained from the area of the left iliac crest.
12. Dr. Jones explained the relationship of the second surgery to plaintiff's injury by accident at Marriott and the surgery to help correct the herniated disk caused thereby. The scar tissue and recurrent herniated disk at level L4-5 were directly related to the original injury and the first surgery. The stenosis at level L5-S1 was asymptomatic until after the first surgery. The stenosis became symptomatic because of the settling of the disk space in the level above created by and following the first surgery.
13. Following the second surgery, plaintiff attended physical therapy and work hardening.
14. Plaintiff continued to experience pain as well as numbness and weakness in her back and lower extremities. She began exhibiting symptoms of increasing anxiety and depression.
15. On 17 September 1993, Dr. Jones rated plaintiff's total permanent partial disability to the back at forty-four percent (44%). This rating was comprised of the original twenty percent (20%) rating plus an additional thirty percent (30%) rating of the remaining eighty percent (80%) following the second surgery.
16. Defendant hired a vocational service, Genex, to attempt to locate a limited duty job at the light or sedentary level. After an extensive search process, plaintiff was hired as a kitchen helper and cook on a part-time basis at Two Morrows Restaurant in Burke County. Plaintiff's pay was established at $4.35 per hour for a 20 hour week. Prior to finding this employment, plaintiff had been rejected by several other employers because of her back condition.
17. Mrs. Morrow, co-owner of the restaurant, agreed to allow plaintiff special job duty considerations on lifting, standing and walking.
18. Although Mrs. Morrow recalled that plaintiff worked approximately three (3) days at the restaurant, the Genex progress report of 9 May 1994 indicates plaintiff worked approximately three (3) weeks with diary entries establishing work dates much longer than Mrs. Morrow's recollection.
19. During her trial work period, plaintiff experienced persistent back pain and leg discomfort. In late April, plaintiff discontinued her job at Two Morrows Restaurant pending an evaluation by her doctor.
20. On 24 May 1994, plaintiff was re-examined by Dr. Jones. Dr. Jones indicated that plaintiff was unable to continue the job at the restaurant and was unable to work at any gainful employment due to her functional limitations, chronic pain, and neurological deficits which were compounded by her emotional and psychological problems.
21. At the request of defendant, a second medical opinion was obtained. Plaintiff was seen by Dr. Robert G. Underdahl, an orthopedic surgeon in Winston-Salem. Plaintiff was examined on 23 August 1994. The record reflects that this was the last time, prior to the hearing, that a physical examination of plaintiff was performed.
22. As of August 1994, Dr. Underdahl found objective evidence of continued neurological deficits into both legs down to the feet as well as complete loss of lumbar motion in flexion and extension and lateral bending to either side.
23. In response to questions posed by defendants, Dr. Underdahl opined:
 a. The forty-four percent (44%) permanent disability rating of Dr. Jones is reasonable;
 b. He had some doubts as to whether complete fusion of the lumbar spine had occurred, raising the possibility of future surgery;
 c. Plaintiff could not perform any type of employment due to her inability to sit or stand any length of time and her continuous pain; and
 d. Plaintiff should be considered for psychological or psychiatric treatment for anxiety, depression, and possible drug dependency.
24. Comparing the notes of Dr. Underdahl to those at the work hardening clinic, plaintiff's range of motion and ability to sit and stand has deteriorated from August 1993, when plaintiff completed work hardening and had a functional capacity evaluation at Burke Rehabilitation Center.
25. Defendant's claims adjuster, Billy Chipman, referred plaintiff for evaluation by a clinical psychologist in Winston-Salem, Jerry W. Noble, Ph.D. This evaluation occurred on 15 November 1994.
26. Dr. Noble interviewed plaintiff and administered written tests. The tests were completed at home by plaintiff due to her discomfort. Dr. Noble found that plaintiff had a personality disorder with histrionic and narcissistic components. Dr. Noble's written report also indicates that plaintiff had clinically significant depression and anxiety symptoms prior to the 1992 accident which had gotten worse following the accident.
27. Dr. Noble indicated that plaintiff's psychological problems, in and of themselves, were not sufficient to keep plaintiff from employment. However, he acknowledged that plaintiff's psychological problems magnified the level of chronic pain which plaintiff suffered from her physical disabilities.
28. Dr. Noble does not believe that psychological treatment is likely to improve plaintiff's vocational prospects.
29. Dr. Noble, as a psychologist, is not a medical doctor and is not trained in orthopedic surgery or neurosurgery. To the extent that Dr. Noble's opinion concerning plaintiff's ability to work based on all factors differs or contradicts the opinions of Dr. Jones or Dr. Underdahl, Dr. Noble's opinion carries less weight.
30. Plaintiff cannot perform the job duties at Two Morrows Restaurant and cannot work gainfully at any other employment. Plaintiff was justified for failing to continue to work at Two Morrows Restaurant.
31. Beginning 17 April 1992, defendant began paying plaintiff temporary total disability payments in the weekly amount of $206.68, based on an average weekly wage of $310.00. Payments were continued through September 1992, when plaintiff returned to work. Temporary total disability benefits were resumed after plaintiff again left work on 17 November 1992.
32. When plaintiff was rated with a twenty percent permanent partial disability to her back on 9 October 1992, defendant began paying plaintiff benefits in the weekly amount of $206.68 for a period of sixty weeks in accordance with N.C. Gen. Stat. §97-31(23). While these payments were being made, defendant simultaneously paid plaintiff weekly temporary total disability payments, pursuant to N.C. Gen. Stat. § 97-29.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. Since plaintiff's permanent partial disability ratings, attributable to her compensable injury, plaintiff has undergone a substantial change for the worse in her condition. N.C. Gen. Stat. § 97-47.
2. As a result of plaintiff's substantial change for the worse in her condition, and her education, work history and lack of vocational skills, plaintiff is totally disabled and is entitled to weekly compensation beginning 1 January 1993, at the rate of $206.08 per week, for the remainder of her life or until further Order of the Industrial Commission, whichever first occurs. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to the reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendant's expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs. N.C. Gen. Stat. §§ 97-2(19), 97-29.
4. Defendant is not entitled to cease or suspend total disability payments to Plaintiff pursuant to its Form 24. In order to permit the suspension of payments, it must be shown that plaintiff's failure to continue to work at Two Morrows Restaurant was unjustified. Benavides v. Summit Structures,Inc., 118 N.C. App. 645, 456 S.E.2d 339 (1995). Plaintiff's inability to work at Two Morrows Restaurant was justified and supported by the opinions of Dr. Jones and Dr. Underdahl.
5. Plaintiff was not entitled to receive simultaneous payments under both sections 97-29 and 97-31. Gray v.Carolina Freight Carriers, Inc., 105 N.C. App. 480,414 S.E.2d 102 (1992). However, defendant is not entitled to a credit because section 97-42 limits recovery of such credit to "shortening the period during which compensation must be paid, and not by reducing the amount of the weekly payment." As plaintiff is permanently disabled and her compensation payments will, absent further order of the Commission, continue for her lifetime, this statutory redress is unavailable to defendant. To otherwise award defendant the amount which defendant erroneously paid to plaintiff in this case would create an inequitable result.
6. The decision whether to allow defendant a credit is addressed to the sound discretion of the Commission. N.C. Gen. Stat. § 97-42; Moetz v. Richards Associates,74 N.C. App. 72, 327 S.E.2d 290 (1985), modified on othergrounds, 316 N.C. 539, 342 S.E.2d 844 (1986). In the exercise of that discretion, the undersigned deny defendant a credit for temporary total disability benefits which were paid to plaintiff simultaneously with permanent partial disability benefits under section 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendant shall pay plaintiff compensation for total disability for the remainder of her life, or until further Order of the Industrial Commission, which ever first occurs, at the rate of $206.08 per week, beginning 1 January 1993. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendant shall pay all reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. With respect to continuing benefits, every fourth payment shall be paid directly to plaintiff's counsel. Consideration and designation of this attorney fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the submission of plaintiff's medical expenses.
4. Defendant's request for termination of the payment of weekly benefits to plaintiff is denied.
5. Defendant's request for a credit for payments made pursuant to N.C. Gen. Stat. § 97-31 is denied.
6. Defendant shall pay the costs.
 S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING: S/ ________________ J. HOWARD BUNN, JR. COMMISSIONER
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
RCR:mdg