The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioner's Opinion and Award and enters the following Amended Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 25 October 1993, an employment relationship existed between plaintiff-employee and defendant-employer.
3. American Manufacturer's Mutual Insurance Company/Kemper National Insurance Company is the carrier at risk.
4. Plaintiff's average weekly wage is $385.20, which yields a compensation rate of $256.80.
5. On 25 October 1993 plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer.
6. The following Industrial Commission forms are admitted into evidence as Stipulated Exhibit #2: Form 26 approved 1 October 1996, Form 26 approved 19 March 1997, Form 26 approved 16 June 1997, Form 28 dated 17 December 1996, Form 28T dated 8 January 1997, Form 33, and Form 33R.
7. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #3. Two volumes were submitted during the hearing before the Deputy Commissioner.
8. Plaintiff's Answers' to Defendant's Interrogatories are admitted into evidence as Stipulated Exhibit #4.
9. Originally defendants were to submit the benefits paid to date and these were to be marked as Stipulated Exhibit #5 when agreed upon by the parties; however, this information was not received by the Deputy Commissioner prior to the close of the record and was not a part of the evidentiary record. Following the filing of defendants' motion for reconsideration and plaintiff's response, the parties agreed that plaintiff was paid permanent partial disability compensation pursuant to the Form 26 from 3 February 1997 through 29 December 1998.
10. The issues to be determined are whether plaintiff has sustained a compensatory change of condition since the 26 February 1997 Form 26, whether plaintiff is due further compensation beginning 18 September 1997, and whether plaintiff refused suitable employment.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 25 October 1993 plaintiff was a 46 year old female employed by defendant-employer as a machine operator. On that date plaintiff sustained a compensable injury to her neck.
2. As a result of this compensable injury plaintiff underwent three separate fusion surgeries by Dr. David Jones: C5-6 level on 24 March 1994, C4-5 level on 16 October 1994 and C6-7 level on 15 July 1996.
3. Following her second cervical fusion, plaintiff was unable to return to work for defendant-employer and participated in vocational rehabilitation. Plaintiff began work as a security guard with Burns Security on 2 March 1995. This position was a gate guard and plaintiff's duties included pushing a button to open the gate for incoming vehicles, answering the phone and sitting in a high back chair prescribed by Dr. Jones to stabilize her neck.
4. Following plaintiff's third cervical fusion in July 1996, she participated in physical therapy. Dr. Jones released plaintiff to return to her job at Burns Security on 19 November 1996 at full duty with no restrictions.
5. After plaintiff's return to work she reported to Dr. Jones on 17 December 1996 that her pain had worsened. On that date plaintiff had myofascial symptoms, residual root irritation, depression and minor pain in the left arm accompanied by episodes of numbness in the left thumb and forefingers.
6. On the 17 January 1997 visit to Dr. Jones, plaintiff complained of intermittent pain along her shoulders and arms, as well as intermittent numbness and tingling in her hands. A nerve conduction study and EMG tests were normal for plaintiff's right arm. However, plaintiff had some evidence of chronic nerve injury on the left side as a result of the earlier cervical surgery.
7. Plaintiff reached maximum medical improvement on 31 January 1997. Dr. Jones rated plaintiff with a permanent partial impairment of 33% to her back. Plaintiff received compensation for this rating pursuant to a Form 26 dated 26 February 1997 and approved by the Commission on 16 June 1997.
8. Prior to her release and rating by Dr. Jones, plaintiff was treated for myofascial pain, shoulder pain, and tingling and numbness in her left shoulder, arm and hand. Dr. Jones treated myofascial symptoms and muscular problems on 11 July 1995 and first treated numbness and tingling in plaintiff's left arm, shoulder and hand on 14 December 1993.
9. Plaintiff complained of numbness and tingling in her hands and pain along her shoulders during her 8 May 1997 follow-up visit to Dr. Jones. These complaints were much the same as they had been during Dr. Jones' entire treatment. Dr. Jones informed plaintiff she would always have a chronic degree of pain and she was essentially at "status quo."
10. Plaintiff sought treatment again from Dr. Jones on 8 August 1997 with complaints of tingling and numbness along her left shoulder, arm and hand. Plaintiff also noted persistent pain around both shoulders.
11. A new MRI did not reveal any substantial changes or abnormalities. Plaintiff's condition had improved in some areas but essentially stayed the same in others.
12. When plaintiff continued to complain of chronic neck and shoulder pain and numbness and tingling in her left arm, Dr. Jones referred plaintiff to Dr. Hans Hansen for pain management. Plaintiff first saw Dr. Hansen on 18 September 1997.
13. Sometime the first of September 1997 plaintiff voluntarily quit her job at Barnes Security. No doctor authorized plaintiff to stop working. When plaintiff saw Dr. Hansen on 18 September 1997, she had not been working for over a week. Plaintiff unjustifiably refused suitable employment when she resigned from this security guard position.
14. Dr. Hansen diagnosed plaintiff with spinal pain, secondary to previous surgeries, and degenerative changes caused by the natural aging process. Dr. Hansen recommended steroid epidural injections and radio frequency ablations. Dr. Hansen stressed wellness and noted plaintiff was overweight and deconditioned. He recommended a work-hardening and re-conditioning program.
15. Plaintiff continued to treat with Dr. Hansen through September 1998. During this time plaintiff's range of motion improved although she did continue to have some myofascial symptoms. Plaintiff's medications were minimized and she was instructed to follow-up with her primary care physician for general wellness.
16. On 3 December 1997 Dr. Hansen referred plaintiff to Dr. Andrea Stutesman, a physical medicine specialist. Dr. Stutesman found that plaintiff was unable to work and wrote plaintiff out of work.
17. Plaintiff continued to treat with Dr. Stutesman throughout 1998. In addition to the problems from plaintiff's cervical fusions, on 15 October 1998, Dr. Stutesman also diagnosed plaintiff with deconditioning, right subacrominal bursitis, and bilateral pectoralis minor syndrome. Dr. Stutesman attributed these additional diagnoses to plaintiff's on-the-job injury and the three fusion surgeries. Dr. Stutesman also indicated that plaintiff was displaying psychological components related to her increased pain problems.
18. On 7 December 1998 Dr. Stutesman deemed plaintiff to be at maximum medical improvement and released plaintiff from her care. She ordered a Functional Capacity Evaluation to assess plaintiff's work restrictions.
19. Plaintiff participated in the first part of the FCE on 4 February 1999. The next day plaintiff was unable to complete the FCE due to pain in her thoracic region, primarily related to an upper respiratory infection. The FCE was never completed, for reasons unclear from the record.
20. Plaintiff received treatment from Dr. Stutesman on 5 May 1999. Dr. Stutesman again deemed plaintiff to be at maximum medical improvement and encouraged plaintiff to seek work.
21. In May 1999 plaintiff's permanent restrictions were no twisting and occasional bending, stair climbing, squatting, kneeling and overhead reaching. Dr. Stutesman also restricted plaintiff to occasional lifting greater than 20 pounds and no constant lifting greater than 5 pounds.
22. Plaintiff's final visit with Dr. Stutesman was on 19 October 1999. At that time plaintiff had not returned to work since her May appointment. Plaintiff complained of increased pain in her shoulders, arms, and around her neck.
23. Plaintiff returned to Dr. Jones for treatment on 28 December 1999. At that time plaintiff experienced many of the same problems with her neck and shoulders that Dr. Jones had previously treated. Dr. Jones diagnosed chronic pain syndrome and recommended continued chronic pain management.
24. As a result of the compensable injury, plaintiff has been unable to return to work or to complete vocational rehabilitation or a Functional Capacity Evaluation due to her increased pain. Additionally, defendants have made no suitable offers of employment to plaintiff.
25. As the result of the compensable injury, plaintiff sustained a substantial change of condition that rendered her totally disabled by 3 December 1997, when she was taken out of work by Dr. Stutesman. As of 3 December 1997, plaintiff experienced a worsening of her condition, as evidenced by changes in work restrictions, additional out of work times from her treating physicians, diagnoses of new related conditions and additional substantial medical treatment.
 ***********
Based upon the foregoing stipulations and findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The position of security guard was suitable to plaintiff's physical capacities and plaintiff's refusal to remain working at this position after September 1997 was not justified. Therefore, plaintiff is entitled to no compensation during the continuation of such refusal until taken out of work by Dr. Stutesman on 3 December 1997. N.C. Gen. Stat. §97-32.
2. As of 3 December 1997, plaintiff's pain had increased and was of such nature that she was disabled and no longer able to earn wages in any employment. Plaintiff therefore sustained a change of condition for the worse, due to the original injury by accident on 25 October 1993. N.C. Gen. Stat. § 97-47.
3. As the result of the compensable injury by accident and her subsequent change of condition, plaintiff was disabled and is entitled to receive total disability compensation at the rate of $256.80 per week beginning 3 December 3 1997 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit for permanent partial disability payments made to plaintiff pursuant to the Form 26 for the 33% permanent functional impairment to her back. The period of 99 weeks of permanent partial disability payments, although paid in part by lump sum payments, ran from 3 February 1997 through 29 December 1998. Therefore, to avoid an overlap of benefits, defendants are entitled to a credit for the period from 3 December 1997 through 29 December 1998. Gray v.Carolina Freight, 105 N.C. App. 480, 486, 414 S.E.2d 102, 105 (1992).
5. Plaintiff is entitled to have defendants provide all medical compensation arising from her injury by accident for her lifetime. N.C. Gen. Stat. § 97-25; Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993). The approved medical expenses include a Functional Capacity Evaluation and any psychological treatment which may be recommended by the treating physician.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. As a result of plaintiff's change of condition, defendants shall pay compensation of $256.80 per week from 3 December 1997 and continuing until plaintiff returns to work or until further order of the Industrial Commission. Said compensation that has accrued shall be paid in one lump sum, subject to an attorney's fee approved below.
2. Defendants shall deduct from payments made to plaintiff for her change of condition, payments made for the period from 3 December 1997 through 29 December 1998 when plaintiff was receiving compensation for the 33% permanent partial disability rating for her back.
3. Defendants shall pay for all medical treatment incurred or to be incurred as a result of plaintiff's change of condition for so long as such treatment is necessary to give relief, effect a cure or lessen plaintiff's period of disability. The approved medical expenses include a Functional Capacity Evaluation and any psychological treatment recommended by the treating physician.
4. Defendants shall pay plaintiff's counsel a reasonable attorney's fee of 25% of the compensation awarded in Paragraph One of this award. Of the accrued amount paid in a lump sum to plaintiff, defendants shall deduct 25% of said compensation and forward that amount directly to plaintiff's counsel. For the balance of the attorney's fee, defendants shall send every fourth compensation check to plaintiff's attorney.
5. Defendants shall pay the costs.
This the ___ day of October, 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb