***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Royal and Sun Alliance provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. Plaintiff's average weekly wage was $474.00, yielding a compensation rate of $316.02 per week.
5. The dates of the alleged injuries by accident were September 7, 2000 and July 7, 1999. Plaintiff last worked for defendant-employer on May 22, 2001. The parties have agreed and stipulated that plaintiff has received $2,360.47 in short term disability benefits from a plan that was fully funded by defendant-employer and carrier.
8. The exhibits stipulated to by the parties and entered into the transcript are:
Termination letter dated 5/22/01;
Employee/Plaintiff's medical records;
Filed Industrial Commission forms.
9. The issues before the Deputy Commissioner were whether plaintiff sustained an injury by accident while in the course and scope of employment with defendant-employer on July 7, 1999; and if so, what, if any, benefits is plaintiff entitled to receive under the North Carolina Workers Compensation Act. The only issue presented on appeal to the Full Commission is whether plaintiff is permanently and totally disabled.
 ***********
Based upon the all of the competent and credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 48 years old at the time of the hearing before the Deputy Commissioner. He completed 2 years of college in a liberal arts program. Plaintiff was involved in a boating accident in 1972 while he attended college and sustained a serious permanent head injury. Plaintiff's head injury resulted in slurred speech, some mental deficiencies and seizure disorder. Plaintiff has undergone medical treatment for these conditions since his accident and is currently treating with Dr. Eric Borresen at Mecklenburg Neurological Associates.
2. Plaintiff injured his left knee in January of 1999, resulting in surgery and a 10% permanent partial disability rating. Plaintiff also had a torn left bicep muscle in 1986, which required surgery. These conditions are unrelated to his employment with defendant-employer.
3. Plaintiff was hired by defendant-employer on August 20, 1973 and worked full time for the defendant-employer until May 22, 2001. For the first 12 years plaintiff worked in the paint shop and following that he was moved to the validator line. A validator is a piece of sterilizing equipment that is used in dental offices. Defendant-employer produces dental equipment. The validators are metal boxes approximately 24 inches long and 12 inches tall. The larger ones weighed approximately 45 pounds and the smaller ones weighed approximately 25 pounds. Plaintiff's job required him to affix the doors onto the chambers and then to place the boxes into a container of water to test the boxes. After taking the boxes from the water, plaintiff removed the door and put parts into the validators. The validators were then tested to see whether they operated correctly and then the validators were boxed for shipping. The door weighed approximately 20-30 pounds, adding to the total weight of the validators.
4. Prior to July 7, 1999 plaintiff never experienced any serious problems with his back. He occasionally strained his back but never required long-term medical care or surgical intervention.
5. On July 7, 1999 plaintiff began working at 6:45 a.m. and worked until 3:15 p.m. On this particular day plaintiff was required to repeatedly lift validator containers with doors affixed that had a combined weight of approximately 75 pounds. Plaintiff placed validators on a table that was approximately chest high. Plaintiff leaned across the table to pick up the validators and placed them in a container of water to test them, lifted them back out, placed parts in them and then placed the validators in a box to be shipped. The validators that plaintiff was lifting that day were the "10-inch validators" which are the heavier of the two types of validators that he normally lifted. Plaintiff normally lifted lighter validators as well as the heavier ones but on this particular day he was required to lift the heavy ones all day long. At approximately 2:00 p.m. plaintiff began to feel pain in the middle of his low back. Plaintiff continued working until 3:15 p.m. From 2:00 p.m. until 3:15 p.m., the pain in his low back continued to get worse. At the end of plaintiff's shift he reported his back pain to his supervisor, Eddie Robinson.
6. Plaintiff drove home following his shift and on the way home his back became stiff. He had trouble getting out of his car when he arrived home. As plaintiff was walking toward the door, he bent to pick up a piece of debris from his lawn, and his back locked and he was unable to stand. Defendant-employer completed a Form 19 dated July 14, 1999 that documents plaintiff's injury on July 7, 1999.
7. Plaintiff was seen by Mr. Wayne Blanton, a physician's assistant to Dr. Norton, at the Nalle Clinic, on July 8, 1999. Plaintiff reported pain in his mid and lower lumbar region with radiation into his lower extremities. Mr. Blanton's assessment was low back strain with radiculopathy and he wrote plaintiff out of work. Mr. Blanton saw plaintiff again on July 16, 1999 for his back condition.
8. Plaintiff was also being treated by Dr. Jack Vesano, an orthopedic surgeon with the Nalle Clinic, during this period of time. Plaintiff first saw Dr. Vesano on July 1, 1999 for pain and discomfort in his left knee due to an automobile accident the previous January. Plaintiff saw Dr. Vesano again on July 26, 1999. Dr. Vesano's notes indicate that plaintiff stated he was lifting and strained his back and as a result felt severe spasms and pain. Dr. Vesano noted that plaintiff was still having pain that radiated into his leg.
9. Dr. Vesano operated on plaintiff's knee in late July of 1999. Plaintiff followed up with Dr. Vesano on August 24, 1999. Plaintiff continued to complain of back pain radiating into his left leg and occasionally in his right. Dr. Vesano recommended an MRI. The MRI revealed that plaintiff had a central disc protrusion at L4-5 with moderate stenosis at L5-S1 and osteophyte spur on the right disc protrusion. In Dr. Vesano's opinion, these conditions were causing plaintiff's pain. Following conservative treatment including epidural steroid injection, Dr. Vesano referred plaintiff to Dr. Eric Laxer for a surgical consultation.
10. Dr. Laxer first saw plaintiff on December 13, 1999. Dr. Laxer's note from that date documents that plaintiff began lifting boxes in July of 1999 when he first felt sharp pain in his back that radiated down his legs. Dr. Laxer's diagnosis was a herniated disc at L4-5. Following a series of epidural steroid injections that were not successful, Dr. Laxer recommended surgery. On February 23, 2000 Dr. Laxer performed a bilateral laminectomy and discectomy at L4-5 and decompression laminectomy and discectomy at L5-S1 on the left. Plaintiff developed an infection in his spine following surgery and had to undergo further surgery on March 15, 2000.
11. Plaintiff was released to return to work by Dr. Laxer on June 1, 2000. Plaintiff returned to work with restrictions of 10 pound lifting, a half-day schedule for the first three weeks and then to gradually increase his hours. Plaintiff never returned to his regular job duties on the validator line. Plaintiff worked various different jobs. Plaintiff had difficulty working and experienced increased pain in his back.
12. Plaintiff reinjured his back on September 7, 2000. Plaintiff was lifting pipes and felt sharp pains across his back and lower back pain after lifting. Defendant-employer accepted this claim as a compensable injury as a result of a specific traumatic incident and began paying plaintiff's medical bills following this incident.
13. Plaintiff continued working for defendant-employer in various light duty capacities until May 22, 2001. Plaintiff's back continued to cause significant problems including severe pain in his low back radiating down his leg.
14. On May 22, 2001, plaintiff was terminated by defendant-employer. Defendant-employer wrote plaintiff a letter on that date explaining that the termination was due to his inability to physically perform any work for defendant-employer.
15. Plaintiff has not worked since May 22, 2001. Plaintiff attempted to rehabilitate himself vocationally on his own by going to North Carolina Vocational Rehabilitation Services.
16. On May 11, 2001, Dr. Laxer was of the opinion that plaintiff might be a candidate for a fusion based on continued severe symptoms of pain and his condition at L4-5 and L5-S1. Plaintiff continued to receive treatment from Dr. Laxer for his low back pain as well as from his primary care physician, Dr. Thomas Rapisardo. Plaintiff began seeing Dr. Welshofer, a physiatrist, at the Miller Orthopedic Clinic in August of 2001. Dr. Welshofer referred plaintiff to Dr. Mark Scheutzow for pain management on September 11, 2001. Plaintiff has received pain management since that time.
17. As of June 4, 2001 Dr. Laxer gave plaintiff permanent work restrictions of no lifting more than 25 pounds, restricted him from bending and twisting, and imposed restrictions for standing and walking, depending on how plaintiff responded to those conditions. Dr. Laxer concluded that plaintiff was disabled from heavy manual labor. Although Dr. Laxer felt plaintiff might be able to perform some manual labor, he wanted to see a job description before he approved any job. Plaintiff has a driver's license, but he has been advised by his physicians not to drive due to his seizures. It is Dr. Laxer's opinion that plaintiff's condition could continue to deteriorate and become more painful to plaintiff.
18. On July 18, 2001 plaintiff was examined by Dr. Alexander Julian III, a psychologist, whose test results showed that plaintiff had a very short attention span and weaknesses in verbal memory, word retrieval, close concentration and abstract reasoning. Dr. Julian concluded that plaintiff's test results were highly indicative of organic brain damage, probably related to seizure activity. Plaintiff's arithmetic achievement was at sixth grade level and spelling and reading achievement was at third grade level or lower. Plaintiff had difficulty remembering words and enunciating them out loud. Dr. Julian concluded that plaintiff presented as a "difficult vocational candidate. He is functioning with a low average intellect but his cognitive abilities are clearly impacted by organic damage, which may be becoming worse with continuing seizures. He would probably find it difficult if not impossible to master the tasks of a new profession at this point. . . ."
19. On November 30, 2001, Dr. Thomas Rapisardo, plaintiff's primary care physician, determined that plaintiff was totally disabled on the basis of his back condition, prior closed head injury and seizure disorder. Plaintiff had persistent back pain. He also had limitations due to memory, intellect, recall and attention that made plaintiff functionally disabled.
20. As the result of plaintiff's injuries by accident on July 7, 1999 and September 7, 2000, his permanent work restrictions, his prior left knee and left arm injuries, his prior closed head injury and the resulting cognitive impairment, the seizure disorder, his limited work skills and difficulty retraining, and his borderline intellectual functioning with poor skills in reading, spelling and arithmetic, plaintiff is and remains totally and permanently incapable of earning wages in his employment with defendant-employer or in any other employment.
 ***********
Based on the foregoing stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident in that he sustained a specific traumatic incident of the work assigned on July 7, 1999, while in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to temporary total disability benefits from July 8, 1999 through June 1, 2000, as a result of this compensable back injury. N.C. Gen. Stat. § 97-29.
3. Plaintiff sustained an admittedly compensable injury by accident resulting in an aggravation of his spine on September 7, 2000. N.C. Gen. Stat. § 97-2(6).
4. "Where a claimant is rendered totally unable to earn wages, partially as a result of a compensable injury and partially as a result of a non-work-related medical condition, the claimant is entitled to an award for total disability under G.S. § 97-29." Counts v. Black Decker Corp., 121 N.C. App. 387, 390, 465 S.E.2d 343, 345, disc.rev. denied, 343 N.C. 305, 471 S.E.2d 68 (1996), citing Weaver v. SwedishImports Maintenance, Inc., 319 N.C. 243, 354 S.E.2d 477 (1987) andErrante v. Cumberland County Solid Waste Management, 106 N.C. App. 114,415 S.E.2d 583 (1992).
5. In the case at bar, as a result of plaintiff's compensable injuries by accident on July 7, 1999 and September 7, 2000, and his resulting chronic pain and permanent work restrictions, as well as his prior closed head injury and cognitive impairment, his prior injuries to his left knee and arm, his limited work experience other than heavy manual labor, his low educational levels and difficulty retraining, and his seizure disorder, plaintiff is totally and permanently disabled and is entitled to receive compensation at the rate of $316.02 per week beginning May 22, 2001 and continuing for the remainder of plaintiff's life or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29;Whitley v. Columbia Lumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336 (1986);Bridges v. Linn-Corriher Corp., 90 N.C. App. 397, 368 S.E.2d 388 (1988).
6. Defendants completely funded the short-term disability coverage for employees. Therefore, pursuant to the Commission's discretion, defendants should receive a credit in the amount of $2,360.97 against any Workers' Compensation Award for short-term disability payments made to plaintiff. N.C. Gen. Stat. § 97-42.
7. Plaintiff is entitled to have defendants pay for all medical treatment that is related to his back condition for so long as such treatment may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay plaintiff temporary total disability compensation from July 7, 1999 through June 1, 2000 at the rate of $316.02 per week.
2. Subject to attorney's fees, defendant-employer shall pay plaintiff permanent total disability compensation from May 22, 2001 and continuing for the remainder of plaintiff's life or until further order of the Industrial Commission. All sums that have accrued shall be paid in one lump sum.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries.
4. Defendants are entitled to a credit in the amount of $2,360.97 for short-term disability payments received by plaintiff.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff is approved for plaintiff's counsel, and shall be paid directly to plaintiff's counsel. All attorney's fees due on accrued compensation shall be paid in one lump sum. For future compensation, plaintiff's counsel shall receive every fourth check.
6. Defendants shall pay the costs of this action.
This the ___ day of November 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER