415 S.E.2d 583 (1992)
106 N.C. App. 114
John J. ERRANTE, Employee, Plaintiff;
v.
CUMBERLAND COUNTY SOLID WASTE MANAGEMENT, Employer;
Self-Insured (Sedgwick James of the Carolinas) Servicing Agent; Defendant.
No. 9110IC485.
Court of Appeals of North Carolina.
April 21, 1992.
*584 A. Maxwell Ruppe, Fayetteville, for plaintiff-appellee.
Teague, Campbell, Dennis & Gorham by Thomas M. Clare and Richard L. Pennington, Raleigh, for defendant-appellant.
GREENE, Judge.
Defendant appeals from an Opinion and Award of the North Carolina Industrial Commission filed 7 March 1991, affirming the Deputy Commissioner's decision finding plaintiff permanently and totally disabled, and awarding plaintiff compensation pursuant to N.C.G.S. §§ 97-29 and 97-25.
The evidence established that plaintiff is a 59 year old man with a sixth grade education who worked for defendant Cumberland County Solid Waste Management for approximately eleven and one half years. Plaintiff's duties varied during the time that he worked for defendant. On 24 May 1988, while performing his duties as landfill *585 inspector, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant when he fell from a dump truck and landed on his head on concrete. Prior to the accident, plaintiff had various non-work-related and nondisabling medical problems, such as diabetes, arthritis, and anemia, however, his attendance record at work was good. As a result of the 24 May 1988 accident, plaintiff sought treatment from Dr. Garison, plaintiff's family physician who specializes in internal medicine, who subsequently referred plaintiff to Dr. Askins, an orthopedic surgeon. Dr. Askins determined that plaintiff's fall had aggravated plaintiff's pre-existing arthritic condition and resulted in shoulder tendonitis. After the accident, plaintiff continued to work for defendant at his usual job for several weeks, however, plaintiff eventually requested a transfer to a position requiring less physical activity due to increased pain. On 1 September 1988, plaintiff was assigned to a container site where his duties included opening and closing the gate, monitoring trash dumping, and operating the compactor.
On 21 October 1988, plaintiff terminated his employment with defendant due to the level of pain that he was experiencing. Since then, he has not worked for defendant or in any employment. On a typical day, plaintiff takes his wife to work in the morning, returns home and spends the entire day in bed, and then picks his wife up in the afternoon. Plaintiff sought worker's compensation benefits, and defendant denied liability. Deputy Commissioner Scott M. Taylor heard the issues on 22 November 1989, and on 19 June 1990 filed an Opinion and Award finding plaintiff permanently and totally disabled as of 21 October 1988 as a result of plaintiff's work-related shoulder tendonitis and aggravation of arthritis, his level of pain, age, education, work experience, diabetes, anemia, and ulcers. Plaintiff was awarded disability compensation at the rate of $174.96 per week for the remainder of plaintiff's life, and reasonable and necessary medical compensation, pursuant to N.C.G.S. §§ 97-29 and 97-25. The Full Commission affirmed and adopted as its own the Deputy Commissioner's Opinion and Award.
The issues presented are whether I) there is competent evidence to support the Industrial Commission's findings that plaintiff terminated his employment due to pain and that plaintiff was disabled at the time he terminated his employment; II) plaintiff's Section 97-29 award must be apportioned to reflect the percentage of disability caused by his work-related injury; III) Section 97-32 precludes plaintiff from receiving any worker's compensation benefits; and IV) the Industrial Commission's award for plaintiff's reasonable and necessary medical expenses is fatally non-specific.

I
The Industrial Commission found that plaintiff terminated his employment with defendant on 21 October 1988 due to the level of pain which he was experiencing, and that plaintiff has been incapable of earning wages since that date. Defendant contends that neither of these findings are supported by competent evidence. We disagree.
It is well settled that the authority to find facts necessary for a worker's compensation award is vested exclusively with the Industrial Commission, and that such findings must be upheld on appeal if supported by any competent evidence, even in the face of evidence to the contrary. Peoples v. Cone Mills Corp., 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986). The evidence in the instant case supports the Industrial Commission's finding that excessive pain caused plaintiff to terminate his employment with defendant. Plaintiff testified that a few months after the accident, around the middle of October 1988, "it got so I just couldn't do it no more.... I was just hurting.... I just stopped working." Dr. Askins testified that in the fall of 1988, there was "very little" that plaintiff could do in the way of job duties, and that, even though plaintiff had been taking physical therapy regularly, "he did not seem to make a lot of improvement." Dr. Askins *586 stated that plaintiff regularly complained of pain at his visits. This evidence supports the Industrial Commission's finding that plaintiff stopped working due to pain.
Dr. Askins also testified that plaintiff certainly would qualify as a disabled individual with his multiple problems.... [H]e was truly disabled to go to his type of job from the time of initial injury. He never was able to be rehabilitated to the point that [he] could do any kind of job that was demanded of him; whether it be light duty or full duty. In my opinion he was disabled from the time of his injury and up to the time I saw him and he is still probably disabled.... I do not believe [plaintiff] can do any kind of gainful employment at this time, under any light duty of any kind.
Dr. Askins also stated that in his opinion plaintiff's impairment is permanent. This evidence supports the Industrial Commission's finding that plaintiff has been incapable of earning wages since 21 October 1988, and that plaintiff is accordingly entitled to compensation for permanent and total disability pursuant to Section 97-29.

II
Defendant argues that plaintiff is not entitled to compensation for total disability pursuant to Section 97-29 because part of plaintiff's total disability is caused by such non-work-related maladies as anemia, ulcers, and diabetes. According to defendant, since only part of plaintiff's total incapacity is caused by his compensable injuries, plaintiff is entitled to compensation under Section 97-30 for partial disability, rather than under Section 97-29. Our Supreme Court has previously rejected a similar argument, holding that our Legislature intended for Section 97-30 to apply only in cases where the claimant is partially incapacitated. Weaver v. Swedish Imports Maintenance, Inc., 319 N.C. 243, 252, 354 S.E.2d 477, 483 (1987). Section 97-30 has no application where a claimant is totally incapacitated partially as a result of his compensable injuries, and partially as a result of noncompensable medical problems. Id. at 252, 354 S.E.2d at 483. Because the evidence established that plaintiff is totally disabled, we reject defendant's argument.
Defendant in the alternative seeks apportionment of plaintiff's Section 97-29 award. North Carolina's Worker's Compensation Act contains two provisions for apportionment of disability awards: (1) N.C.G.S. § 97-33 (1991) (providing for prorating of a permanent disability award where employee sustained prior disability due to epilepsy, military service, or injuries in another employment); and (2) N.C.G.S. § 97-35 (1991) (providing for apportionment of permanent injury award when employee has previously incurred partial disability through loss of one of specific body parts). Apportionment also has been allowed by our Courts when a non-work-related disease or infirmity actually causes part of an employee's total disability. Gray v. Carolina Freight Carriers, Inc., 105 N.C.App. 480, ___, 414 S.E.2d 102, 106 (1992) (citations omitted). However, apportionment is not permitted when an employee becomes totally and permanently disabled due to a compensable injury's aggravation or acceleration of the employee's nondisabling, pre-existing disease or infirmity. Id. at ___, 414 S.E.2d at 107. An employee is also entitled to full compensation for total disability without apportionment when the nature of the employee's total disability makes any attempt at apportionment between work-related and non-work-related causes speculative. Harrell v. Harriet & Henderson Yarns, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985).
An application of the foregoing principles reveals that defendant is not entitled to apportionment of plaintiff's Section 97-29 award. Neither of the apportionment statutes previously discussed apply in plaintiff's case. Moreover, even though the evidence established that plaintiff's non-work-related anemia and diabetes caused part of plaintiff's permanent and total disability, thus permitting the application of judicial apportionment, no evidence was presented attributing any percentage of plaintiff's total incapacity solely to his compensable injuries. In fact, Dr. Askins *587 testified that "there is no way anybody can honestly say" what percentage of plaintiff's total disability is caused by his compensable injuries and what percentage is caused by his noncompensable medical problems. Accordingly, under Harrell, plaintiff is entitled to full compensation for total and permanent disability.

III
Defendant argues that, in light of the fact that plaintiff was offered a "light duty" position, Section 97-32 precludes plaintiff from receiving any compensation whatsoever. Section 97-32 provides that "if an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such [unjustified] refusal." N.C.G.S. § 97-32 (1991). However, our Supreme Court has held that "where an employee is properly determined to be totally and permanently disabled under [Section] 97-29, [Section] 97-32 has no application." Peoples, 316 N.C. at 444-45, 342 S.E.2d at 810. Because the Industrial Commission properly determined that plaintiff is permanently and totally disabled under Section 97-29, defendant's argument is without merit.

IV
Part of plaintiff's disability award included, pursuant to Sections 97-25 and 97-29, compensation for all of plaintiff's "continuing reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or course of rehabilitative services when the bills for same have been submitted ... and approved by the [Industrial] Commission." Section 97-25 requires the employer to provide to the employee compensation for medical treatment and supplies. The version of Section 97-25 in effect at the time of plaintiff's award specifically provided for the payment of:
[m]edical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, and in addition thereto such original artificial members as may be reasonably necessary at the end of the healing period....
N.C.G.S. § 97-25 (1973).[1] The version of Section 97-29 in effect at the time also contained a provision for compensation for the same medical expenses as those delineated in Section 97-25. Defendant contends that the Commission's failure to specify those conditions for which defendant must provide medical treatment constitutes reversible error. In effect, defendant maintains that an award for medical compensation must be limited to medical expenses reasonably related to the employee's compensable injury. We agree.
The Industrial Commission's award to plaintiff for medical expenses specifically limited such expenses to those which are "reasonable and necessary." In light of our Courts' repeated admonition that our Worker's Compensation Act was never intended to be a general accident and health insurance policy, see, e.g., Weaver, 319 N.C. at 253, 354 S.E.2d at 483, it is axiomatic that "reasonable and necessary" worker's compensation awards for continuing medical expenses pursuant to Sections 97-29 and 97-25 contemplate only those reasonable and necessary expenses that are related to the compensable injury or injuries. However, in order to alleviate any confusion on the subject, we specifically so hold and remand the award to the Industrial Commission for modification to provide expressly for plaintiff's medical expenses to include only those expenses incurred as a *588 result of plaintiff's compensable injuries. However, if it cannot be determined which portion of plaintiff's medical expenses relate solely to his compensable injuries, then, in keeping with Harrell, plaintiff would be entitled to compensation for his total expenses. In any event, we note that in the case of a controversy arising between plaintiff and defendant relative to the continuance of medical treatment, the Industrial Commission is vested with the authority to order such further treatments as may in its discretion be necessary, N.C.G.S. § 97-25 (1991), and if the Commission approves a medical bill that in defendant's opinion is not compensable, then defendant at that time shall have a right and opportunity on appeal to challenge the Commission's decision. Bass v. Mecklen burg County, 258 N.C. 226, 235, 128 S.E.2d 570, 576 (1962).
For the foregoing reasons, the Industrial Commission's decision awarding plaintiff compensation for permanent and total disability and medical expenses pursuant to Sections 97-29 and 97-25 is affirmed as modified.
Remanded for modification.
JOHNSON and COZORT, JJ., concur.
NOTES
[1] Section 97-25 was amended effective 15 July 1991, and now simply provides that "medical compensation" shall be provided by the employer. Section 97-29 was similarly amended. However, the substitution of the term "medical compensation" for the more specific list of compensable expenses would not compel a result different from the one we reach in construing the pre-July 1991 versions.