***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. Plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner and herein holds against Defendant American Home Assurance Company and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The stipulations, deposition testimony and exhibits before Deputy Commissioner Glenn when he filed his April 3, 1996, Opinion and Award are a part of this record. This evidence is contained in part in the transcript of depositions of Dr. Davey Stallings on July 5, 1995, Dr. Harold Barbee on July 18, 1995 and John T. Hayes, on July 12, 1995.
2. Defendant ACE USA (formerly CIGNA) paid plaintiff compensation for temporary total disability on at least the following dates: October 17, 1993 through February 14, 1994; January 5, 1995 through May 30, 1995; April 11, 1996 through April 9, 1998; and July 16, 1998 to September 24, 1998. Defendant ACE USA paid plaintiff compensation for a 15% permanent partial disability of the back rating, or 45 weeks of compensation on May 6, 1996; and for a 10% permanent partial disability of the back rating, or 30 weeks of compensation on March 16, 1999.
3. At the time of the alleged injury on October 21, 1999, all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all times relevant to this claim, the employer-employee relationship existed between plaintiff and defendant-employer.
5. At the time of the October 21, 1999, alleged injury, American Home Assurance Company was the carrier on the risk. ESIS was the claims administrator. At the time of the injuries on September 7, 1993 and October 6, 1993, ACE USA was the carrier on the risk.
6. The parties have submitted the stipulation of plaintiff's Exhibit 58, the contents of the supervisor's file, into evidence.
7. The depositions and medical records of Drs. Paul B. Suh, Nancy I. Faller, John T. Hayes, Roger L. McCauley and William O. Bell are hereby a part of the evidence in this matter.
 *********** EVIDENTIARY RULINGS
In paragraphs 47(j) and (k) of the Pre-hearing Agreement, plaintiff asserts a request for sanctions because of the activities of Marlene Markey and other agent(s) of defendants, including whether Dr. John Hayes' opinion and testimony regarding plaintiff's ability to work should be disregarded due to improper ex parte communications with defendants. Plaintiff's objection to Dr. Hayes' testimony is SUSTAINED but only as to the testimony regarding plaintiff's ability to return to work during and after December of 1999 inasmuch as there is no evidence of any ex parte
communication occurring prior to that date. Although Dr. Hayes' testimony has been excluded for substantive purposes, it has been considered for the purposes of making a ruling on this objection. Furthermore, it is noted that the parties stipulated into evidence much of the otherwise objectionable documentation generated by Dr. Hayes as a result of defendant-employer's ex parte communication with Dr. Hayes. Since that documentation was stipulated into evidence, the Full Commission OVERRULES any objection to said documentation. The Full Commission finds that the foregoing ruling serves as an adequate sanction due to any activities on the part of defendants' agents.
In addition, defendants' objection to plaintiff's claim for treatment of depression as set forth in paragraph 47(e) of the Pre-hearing Agreement is OVERRULED.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
On September 7, 1993 and October 6, 1993, plaintiff sustained injuries to her low back arising out of and in the course of her employment with defendant-employer, which injuries were found to be compensable under the Workers' Compensation Act by Opinion and Award filed by Deputy Commissioner Glenn on April 3, 1996.
On October 7, 1993, plaintiff came under the care of Dr. John Hayes, an orthopaedic surgeon in Winston-Salem, for the treatment of these injuries.
As a result of the 1993 injuries, Dr. Hayes performed (1) a laminectomy and excision of ruptured disc material at L4-5 on October 12, 1993, (2) a repeat laminectomy at L4-5 with removal of newly extruded disc material and scar tissue on February 3, 1995 and (3) a third laminectomy at L4-5 with excision of degenerated disc and interbody spiral fusion on February 3, 1997.
On May 25, 1995, Dr. Hayes rated plaintiff as having 15% permanent partial impairment to the back and on March 17, 1998, Dr. Hayes increased plaintiff's rating to 25% permanent partial impairment to the back.
As a result of her injury, and the subsequent surgeries, plaintiff was unable to work during at least the following dates: October 17, 1993 through February 14, 1994, January 5, 1995 through May 30, 1995, April 11, 1996 through April 9, 1998 and July 16, 1998 to September 24, 1998. Defendant ACE USA paid plaintiff compensation for temporary total disability during those dates.
On July 16, 1998, Dr. Hayes referred plaintiff to Piedmont Anesthesia Pain Consultants for pain management. Plaintiff began a course of pain management with Dr. Nancy Faller on August 18, 1998.
On August 18, 1998, Dr. Faller diagnosed plaintiff as suffering from post-laminectomy syndrome and performed a lumbar epidural steroid injection, which plaintiff reported to be successful in reducing her back pain.
Dr. Faller performed another steroid injection on September 15, 1998, which plaintiff reported to have totally relieved her back pain for approximately eight weeks.
On September 17, 1998, Dr. Hayes released plaintiff to return to work, indicating that she should lift no more than 15 or 20 pounds and that she should only lift items weighing that much on an occasional basis.
On or about September 24, 1998, plaintiff returned to work for defendant-employer where she worked for more than a year until October 1999. After she returned to work, plaintiff continued to experience low back pain and periodically sought treatment for her low back condition after September 24, 1998.
On January 11, 1999, plaintiff returned to Dr. Faller, who performed another steroid injection, which plaintiff reported to provide relief for four months. She returned for injections on June 4, 1999 and September 14, 1999 though she was able to continue to work during this time.
Plaintiff testified that on October 21, 1999, she was working for defendant-employer when she re-injured her low back while moving a basket of parts for aircraft seats. Plaintiff reported the incident to her supervisor but did not seek medical attention until October 28, 1999, when she consulted her family physician, Dr. Christopher Warnimont of North Point Medical Associates in Winston-Salem. Plaintiff had already scheduled an appointment to return to Dr. Hayes on November 2, 1999 and Dr. Warnimont wrote plaintiff a note excusing her from work until she could be seen by Dr. Hayes.
On October 21, 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, when she sustained a lumbar sprain/strain type injury, which aggravated and exacerbated plaintiff's pre-existing back condition. The resultant pain increased to such a degree that plaintiff became unable to work.
Plaintiff returned to Dr. Hayes on November 2, 1999, reporting that she had re-injured her back while lifting a basket of parts on October 21, 1999. Dr. Hayes ordered a lumbar MRI scan, which was performed on November 10, 1999, and returned to see Dr. Hayes on November 15, 1999. At that time, Dr. Hayes indicated that plaintiff remained disabled from her regular job but stated that she could return to work within the restrictions he had identified for plaintiff on September 17, 1998. Dr. Hayes strongly recommended that plaintiff undergo re-training so that she could return to lighter-type work. In particular, Dr. Hayes stated that plaintiff's work with defendant-employer was "incompatable" with her back condition and suggested that plaintiff was "paying a heavy price for having worked at this job for many years."
On or about December 14, 1999, a representative or representatives of defendant-employer contacted Dr. Hayes to advise him that defendant-employer had offered plaintiff a position that involved no lifting of baskets but only required that she stamp individual airplane parts weighing 1.5 pounds or less. According to Dr. Hayes, he felt the plaintiff was capable of performing the job provided that she did not have to lift the parts from the floor to the workbench but he expressed concern that plaintiff might be put into the circumstance where she was required to do heavier lifting and could therefore re-injure her back. Dr. Hayes also expressed that office work or supervisory work without significant physical demands on plaintiff's low back would also be appropriate.
On December 22, 1999, plaintiff returned to Dr. Faller for another epidural steroid injection. At that time, plaintiff reported that the September 14, 1999 injection had been helpful.
On January 4, 2000, plaintiff returned to Dr. Hayes for further evaluation. At the time, plaintiff complained of a fairly constant level of pain but Dr. Hayes released plaintiff to return to work in accordance with the job description he had received from defendant-employer in December of 1999. Plaintiff returned to work on January 7, 2000.
On January 14, 2000, plaintiff contacted Dr. Hayes' office to advise that she was having a difficult time within three to four hours of beginning her shift at work and although defendant-employer had cooperated with the restrictions provided by Dr. Hayes, plaintiff reported that her pain was increasing and requested another appointment with Dr. Hayes, which was scheduled for January 18, 2000.
The medical evidence contains no indication that plaintiff returned to Dr. Hayes on January 18, 2000 but documents plaintiff's next contact with Dr. Hayes' office as a telephone call on January 27, 2000. At that time, plaintiff reported that she was unable to maintain the pace of her work and Dr. Hayes observed that there seemed to be no other solution than re-training plaintiff for lighter work. On or about January 29, 2000, Dr. Hayes signed a Form 28U indicating that plaintiff was unable to continue her return to work as a result of her injury. The Form 28U did not specify whether her incapacity to continue working was related to the 1993 injuries or the 1999 injury.
On February 7, 2000, plaintiff returned to Dr. Faller for another epidural steroid injection, reporting that the previous injection had been helpful but that the pain had returned to its previous intensity.
Through an arrangement with its insurance carriers, John Sweeney was the dedicated adjuster for claims against defendant-employer, even though defendant-employer had changed its coverage from defendant ACE USA to defendant American Home Assurance Company as of the October 21, 1999 injury.
Following the 1999 injury, John Sweeney initially instituted payment of compensation to plaintiff based upon the 1993 injuries. However, on or about February 18, 2000, Mr. Sweeney caused defendant American Home Assurance Company to issue payment to defendant ACE USA in reimbursement for the disability benefits paid to the plaintiff since October 21, 1999 and began paying plaintiff compensation through defendant American Home Assurance Company based on the 1999 claim. Thereafter, Mr. Sweeney began paying plaintiff compensation weekly under the 1999 claim.
On or about February 16, 2000, Mr. Sweeney forwarded partially completed Forms 21 and 26 to plaintiff's counsel for execution. There is no evidence that either plaintiff or her counsel ever signed these agreements, that any representative of defendant-employer signed these agreements, or that these agreements were ever returned to any agent of defendants. To the contrary, when defendant-employer learned that these agreements had been submitted to plaintiff's counsel, Marlene Markey of defendant-employer notified Mr. Sweeney that defendant-employer would not sign either of the forms since they purported to accept liability for the 1999 claim, when it was the position of defendant-employer that plaintiff's ongoing condition was the result of the 1993 injuries, as opposed to any injury in 1999.
On March 2, 2000, plaintiff returned to Dr. Hayes, reporting that she was continuing to suffer from pain in her back and right leg. Dr. Hayes commented that it was clear that plaintiff was not going to be able to return to heavy work with defendant-employer and recommended that plaintiff continue efforts to re-train for lighter work. Dr. Hayes instructed plaintiff to return on an as-needed basis.
On or about March 27, 2000, defendant American Home Assurance Company issued payment to plaintiff for compensation for the period from March 23, 2000 through March 30, 2000. After receiving notice that she would receive no additional compensation for disability, plaintiff filed a motion on April 14, 2000 for reinstatement of compensation and assessment of a penalty for late payment of compensation. By letter dated May 1, 2000 to Executive Secretary Tracey Weaver of the North Carolina Industrial Commission, Mr. Austin, who represents defendant-employer and defendant American Home Assurance Company stated that plaintiff's compensation would be immediately reinstated at the rate of $319.57, which was the rate for the 1993 injuries. On May 4, 2000, defendant American Home Assurance Company issued payment to plaintiff for disability for the period of time from March 30, 2000 through May 4, 2000. Thereafter, on June 12, 2000, Executive Secretary Weaver ordered, among other things, that defendants pay a 10% penalty on all amounts of compensation that were not paid within 14 days of when the payments became due.
Subsequent to the injury by accident of October 21, 1999, plaintiff consulted Dr. Roger McCauley, a psychiatrist in Winston-Salem, on May 9, 2000 upon referral from Dr. Warnimont. Plaintiff consulted Dr. McCauley on a total of nine occasions through and including June 21, 2001 for ongoing anxiety and depressive symptoms. The symptoms for which he treated plaintiff were initially attributable to the symptoms that she sustained following the 1993 injuries and progressed over time until plaintiff was forced to seek help. Dr. McCauley confirmed that an event such as the October 21, 1999 injury could aggravate and accelerate depression and anxiety and cause an employee, who had previously managed on her own to require psychiatric treatment.
On or about June 5, 2000, Marlene Markey contacted Dr. Hayes, indicating that due to a new work station, plaintiff's work duties were within the restrictions Dr. Hayes had identified on September 17, 1998. Ms. Markey forwarded a job description and photographs, requesting that Dr. Hayes state whether plaintiff was capable of performing the work.
On June 7, 2000, Dr. Hayes responded to Ms. Markey's correspondence, indicating that he believed that plaintiff to be capable of performing the job described by Ms. Markey.
On June 27, 2000, plaintiff returned to Dr. Hayes, reporting that she had returned to work the previous day and complaining of intense pain in her lumbar area radiating to her right lower extremity. Dr. Hayes reiterated his opinion that plaintiff was capable of performing the work described by Ms. Markey in her correspondence of June 5, 2000 but noted that plaintiff complained that she was in too much pain to carry on the job. Dr. Hayes discharged plaintiff to return on an as-needed basis.
On June 29, 2000, plaintiff consulted Dr. Paul Suh, an orthopaedic surgeon in Chapel Hill. At that time, plaintiff complained of low back and bilateral leg pain. Plaintiff provided a history to Dr. Suh but made no mention that Dr. Suh could recall of any injury occurring during 1999. Nonetheless, Dr. Suh testified that in his opinion, plaintiff's 1999 injury significantly contributed to plaintiff's disability.
After seeing Dr. Suh, plaintiff continued to follow-up with Dr. Faller and Dr. McCauley on a periodic basis.
On December 18, 2000, plaintiff returned for her final visit with Dr. Hayes, reporting that her sciatica was better and that the steroid injections administered by Dr. Faller had provided her with some relief. Dr. Hayes stated that plaintiff did not have any neurologic deficit and noted that plaintiff had a solid fusion at L4-5. Dr. Hayes again indicated that plaintiff should not be required to do any heavy work and encouraged her to attempt vocational re-training. On December 28, 2000, Dr. Hayes wrote a letter to plaintiff, instructing her that she would need to find another physician to manage her ongoing care.
On March 7, 2001, plaintiff consulted Dr. David O'Brien, a physiatrist Winston-Salem. Dr. O'Brien felt that plaintiff was likely at maximum medical improvement and did not believe that plaintiff was suffering from a pseudoarthrosis. Dr. O'Brien felt that epidural injections might be helpful for an acute flare-up of back pain but did not believe that plaintiff would have long-term benefit from having regularly scheduled injections. Dr. O'Brien felt that plaintiff could work provided that she avoided significant bending and twisting activities and lifting of more than five to ten pounds.
On April 26, 2001, plaintiff consulted Dr. William Bell, a neurosurgeon in Winston-Salem for another evaluation. At the time, plaintiff reported that she had experienced a sudden onset of low back pain and numbness into both legs and feet beginning at the end of February. Dr. Bell has recommended that plaintiff undergo a discogram and testified that plaintiff has been unable to work, in his opinion, since April 26, 2001. Dr. Bell testified that he believed the injury of October 21, 1999 resulted in plaintiff's current condition.
Dr. Hayes testified that a discogram is "literally a worthless examination," which has significant potential hazards. Defendants have not authorized plaintiff to undergo a discogram or to continue care with Dr. Bell, though plaintiff has requested both.
There is a dispute in the medical evidence as to whether the 1999 injury resulted in a permanent aggravation of the condition resulting from the 1993 injuries and the ensuing surgeries. Dr. Hayes testified that he believed that the 1999 injury had resolved by June 27, 2000, however Dr. Bell testified that he believed that the 1999 injury is a significant factor in plaintiff's ongoing low back symptomology.
The Full Commission gives more weight to the testimony of Drs. Bell, Faller and Suh than to that of Dr. Hayes in regard to the cause of plaintiff's current back condition. In this regard, plaintiff was suffering different symptoms after October 21, 1999 than previously. Her original problems were primarily left sided while her post October 21, 1999 problems were right sided and she was experiencing more problems in November 1999 than in the prior year.
Plaintiff's ongoing treatment with Dr. Faller for pain management, Dr. McCauley for anxiety and depressive symptoms and Dr. Bell for treatment of her physical condition is reasonable and necessary as a result of the 1999 injury by accident which aggravated the 1993 injuries.
In light of the testimony as well as the deposition testimony and medical records from Dr. Hayes, the Full Commission finds that the position to which plaintiff had returned with defendant-employer between September 24, 1998 and October 21, 1999 was not suitable to plaintiff's capacity in that it required plaintiff to violate the restrictions identified for her by Dr. Hayes on September 17, 1998.
As a result of the 1993 injuries as aggravated by the 1999 injury by accident, plaintiff was unable to return to work in any capacity from October 28, 1999 through January 6, 2000 and from January 20, 2000 and continuing.
On July 11, 2000, Dr. Faller signed a Form 28U indicating that plaintiff was prevented from continuing her return to work after June 30, 2000 as a result of the "injury for which compensation has been paid." As a result of 1993 injuries as aggravated by the 1999 injury by accident, plaintiff has been unable to return to work in any capacity since June 30, 2000.
The parties' Pre-hearing Agreement indicates that plaintiff's average weekly wage may be determined by an accurate wage chart prepared by defendants but the parties have been unable to agree on the stipulation of a wage chart. With regard to the 1993 injuries, the Opinion and Award filed April 3, 1996 found plaintiff's average weekly wages to be $473.76 for the September 7, 1993 injury and $479.36 for the October 6, 1993 injury. With regard to the 1999 injury, plaintiff's Exhibit 50 contains plaintiff's attendance calendars for 1998 and 1999 and plaintiff's Exhibit 57 contains documentation of plaintiff's bi-weekly earnings during the 26 pay periods prior to October 21, 1999. Based on that documentation, plaintiff earned $25,288.62 during the 52 weeks ending October 10, 1999 and that plaintiff did not lose more than seven consecutive calendar days at any time during said 52 weeks. This supports an average weekly wage for the 1999 injury of $486.32, which is fair to both plaintiff and defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
On October 21, 1999, plaintiff sustained a back injury arising out of and in the course of her employment with defendant-employer, which was the direct result of a specific traumatic incident of the work assigned. This back injury aggravated and exacerbated plaintiff's pre-existing back problems resulting from the 1993 injuries and subsequent surgeries. There should not be any apportionment regarding plaintiff's current disability, as apportionment is not permitted when a condition aggravates a pre-existing condition. Errante v. Cumberland County Solid WasteManagement, 106 N.C. App. 114, 119; 415 S.E.2d 583, 586 (1992). Kendrickv. City of Greensboro, 80 N.C. App. 183; 341 S.E.2d 122, disc. rev.denied, 317 N.C. 335, 346 S.E.2d 500 (1986).
On October 21, 1999, plaintiff's average weekly wages were $486.32, which yields a compensation rate of $324.21.
As a result of plaintiff's back injury of October 21, 1999, plaintiff was totally disabled from October 28, 1999 through January 6, 2000 and from January 20, 2000 and continuing and is entitled to weekly compensation at the rate of $324.21 from defendant American Home Assurance Company. N.C. Gen. Stat. § 97-29.
Defendant American Home Assurance Company is responsible for payment of medical compensation plaintiff incurred as a result of her back injury of October 21, 1999, including the treatment she received for her low back condition from October 28, 1999 through June 28, 2000 and ongoing until such time as plaintiff is able to return to work or until further order of the Industrial Commission. Dr. William Bell, Dr. Roger McCauley and Dr. Nancy Faller are hereby specifically approved as authorized physicians for treatment of the ongoing consequences of the 1999 injury by accident which aggravated her previous 1993 injuries. N.C. Gen. Stat. §§ 97-25, 97-25.1.
Defendant ACE USA is responsible for payment of medical compensation plaintiff incurred as a result of the 1993 injuries, including the treatment she received for her low back condition until October 21, 1999. N.C. Gen. Stat. §§ 97-25, 97-25.1.
Inasmuch as the Forms 21 and 26 to which reference is made in the findings of fact were not signed on behalf of plaintiff, her attorney or defendant-employer and defendant-employer has specifically objected to the execution of those documents, the Forms 21 and 26 should not be approved. Furthermore, defendants did not violate N.C. Gen. Stat. §97-82 by failing to submit the agreements to the Industrial Commission for approval and are not estopped from denying the information set forth in these unsigned agreements. N.C. Gen. Stat. § 97-82; Workers' Compensation Rule 501.
To the extent that payment of compensation had accrued for the period of time from March 30, 2000 through May 4, 2000 but was not paid within 14 days of becoming due, defendant American Home Assurance Company shall pay to plaintiff a penalty of 10% of said amount. N.C. Gen. Stat. §97-18(g).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
Defendant American Home Assurance Company shall pay plaintiff compensation for disability at the rate of $324.21 per week from October 28, 1999 through January 6, 2000 and from January 20, 2000 and continuing until plaintiff returns to work or until further order of the Industrial Commission
Defendant American Home Assurance Company shall pay a penalty of 10% of any compensation accrued between March 30, 2000 and May 4, 2000 which was not paid within 14 days after becoming due.
Defendant American Home Assurance Company shall pay all bills for medical compensation incurred by plaintiff as a result of the 1999 injury by accident, including the treatment plaintiff received subsequently for her low back condition.
Defendant ACE USA shall pay all bills for medical compensation plaintiff incurred as a result of the 1993 injuries, including all bills for treatment of plaintiff's low back condition incurred prior to October 21, 1999.
A reasonable attorney's fee in the amount of 25% of the compensation due plaintiff under the terms of this Opinion and Award is hereby approved for plaintiff's counsel. Defendant American Home Assurance Company shall issue every fourth payment of the compensation to be paid plaintiff directly to plaintiff's counsel.
Defendant ACE USA shall bear the costs associated with I.C. No. 382179 and defendant American Home Assurance Company shall bear the costs associated with I.C. No. 983443.
This the 12th day of May 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER