***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Stephenson and Gillen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen, with modifications.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in the Pre-Trial agreement as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. 2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Plaintiff sustained a compensable injury. This claim was accepted on a Form 60 filed May 15, 2002.
4. Plaintiff's average weekly wage at the relevant time was $739.60.
5. The following items were stipulated into evidence:
 a. The parties' Pre-Trial Agreement.
 b. A packet of Industrial Commission filings.
 c. A packet of medical and rehabilitation records.
 d. Plaintiff's employment file.
 e. Plaintiff's discovery responses.
 f. Defendants' discovery responses.
 ***********
During the hearing Deputy Commissioner Stephenson allowed defendants' Motion to Compel Discovery of the medical records of Dr. Schneider (a chiropractor) and Johnston Memorial Hospital.
 *********** *Page 3 
By correspondence filed February 11, 2005, defendants supplemented the medical and rehabilitation records with additional records from Rex Hospital and RMI Vocational Rehabilitation.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Pursuant to the Form 60 filed May 15, 2002, defendants have paid plaintiff $493.09 per week from May 16, 2002, through the present and continuing. Plaintiff filed a Form 33 Request for Hearing in this matter requesting that she be designated permanently and totally disabled.
2. Plaintiff suffered an admittedly compensable accident on September 18, 2001, when she injured her left knee as she stepped down a ladder. At the time of this accident, plaintiff worked for Fresenius as a Mix Homogenization Operator.
3. Plaintiff is a high-school graduate and has an extensive work history.
4. Following the September 18, 2001, accident, plaintiff received short-term disability from February 19, 2002, through July 17, 2002. Plaintiff then received long-term disability from August 18, 2002, until August 18, 2004.
5. Immediately following the September 18, 2001, accident, plaintiff was seen by Dr. Meehan.
6. Following the accident, plaintiff saw Dr. Alioto, an orthopedic specialist. Dr. Alioto originally diagnosed a calf strain or sciatic nerve problem. Two weeks later, when plaintiff's pain had not subsided, Dr. Alioto ordered an MRI that revealed a meniscus tear. Dr. Alioto testified that *Page 4 
plaintiff's pain is caused by the acute meniscus tear as well as her degenerative arthritis. Dr. Alioto could not apportion how much pain is caused by each condition.
7. On November 21, 2001, plaintiff had surgery performed on her left knee by Dr. Alioto to shave away the torn cartilage. Plaintiff was thereafter prescribed physical therapy and returned to work with Fresenius in the filling and mixing room on February 19, 2002.
8. Following her return to work, plaintiff experienced an increased level of pain. Dr. Alioto thought it was likely that plaintiff had Reflex Sympathetic Dystrophy (hereinafter RSD).
9. Dr. Alioto performed a lateral release debridement on plaintiff's left knee on April 10, 2002. Plaintiff again underwent physical therapy.
10. As of January 10, 2003, Dr. Alioto diagnosed plaintiff as being at maximum medical improvement with work restrictions of no standing more than 1-2 hours, no excessive walking, no climbing, no squatting, and that the plaintiff must be allowed to sit. At Dr. Alioto's post-hearing deposition he testified that he would not change plaintiff's work restrictions from the ones he imposed on January 10, 2003. Dr. Alioto testified that plaintiff was not a good candidate for a total knee replacement at this time.
11. On July 3, 2002, Dr. Alioto referred plaintiff to a pain clinic where plaintiff began treatment with Dr. Thomas Buchheit of Carolina Pain Consultants for her RSD. Starting on July 29, 2002, and continuing through December 29, 2004, plaintiff had a series of 14 left-sided lumbar sympathetic blocks.
12. On July 3, 2003, Dr. Buchheit examined plaintiff and found her to be improving and near maximum medical improvement. Plaintiff last saw Dr. Buchheit on December 29, 2004. Dr. Buchheit was satisfied that plaintiff was stable on her medications and that her pain would improve over *Page 5 
time. Dr. Buchheit's December 29, 2004, note further states that plaintiff is able to conduct job search activities while taking her medications, which are Trileptal, Klonopin, Aleve, and Flexeril.
13. Dr. Buchheit testified that he does not restrict patients from driving or working who are taking the same medications as plaintiff.
14. At the time of the hearing, plaintiff was attending a weekly typewriting / keyboarding class that lasted 3 hours. Plaintiff also attended weekly meetings with Paul Goodney, her vocational rehabilitation specialist.
15. Goodney testified at the hearing that plaintiff was a good prospect for employment and that plaintiff lives within 35-50 miles of a job market containing jobs that plaintiff was capable of doing.
16. Dr. Buchheit testified that plaintiff's prognosis was difficult to ascertain. He stated that in some RSD cases the pain gets better over time and sometimes the pain will resolve suddenly.
17. Dr. Alioto testified that there was a 20% chance that plaintiff's condition would improve somewhat and a 5% chance that it would completely improve.
18. Neither Dr. Alioto nor Dr. Buchheit currently evaluate plaintiff as being unable to work in any capacity. To the contrary, they establish that job searching and sedentary work are possible for plaintiff.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to be found permanently and totally disabled, a plaintiff must produce competent medical evidence that the plaintiff is not able to perform gainful employment of any kind, *Page 6 
including light duty positions. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Errante v. Cumberland County SolidWaste Management, 106 N.C. App. 114, 145 S.E.2d 583 (1992).
2. At this time, the medical evidence in this case does not establish that plaintiff is unable to perform gainful employment of any kind, including light duty positions. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Errante v. Cumberland County SolidWaste Management, 106 N.C. App. 114, 145 S.E.2d 583 (1992).
3. As a result of her admittedly compensable September 18, 2001, injury by accident, plaintiff is entitled to temporary total disability compensation at a rate of $493.09 per week from May 16, 2002, through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of September 18, 2001. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim to be designated permanently and totally disabled must be, and hereby is, DENIED. *Page 7 
2. For her temporary total disability defendants shall pay plaintiff temporary total disability compensation at a rate of $493.09 per week from May 16, 2002 through the present and continuing until further order of the Commission
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of September 18, 2001.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 2 of this Award is approved for plaintiff's counsel to be paid as follows: defendants shall send directly to plaintiff's counsel every fourth compensation check otherwise due plaintiff.
5. Plaintiff's motion for an order directing defendants to provide aqua therapy as prescribed by Dr. Thomas Buchheit, M.D., is allowed. Defendants shall authorize and pay for such aqua therapy, provided Dr. Buchheit still believes that it would be therapeutic for plaintiff.
6. Defendants' motion for an order compelling plaintiff to comply with their vocational rehabilitation efforts is denied.
7. Each side shall bear its own costs.
S/___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ LAURA KRANFELD MAVRETIC COMMISSIONER *Page 1